##### FOR THE

### COUNTY OF CHITTENDEN,

JANUARY TERM, 1846.

---

PRESENT,

Hon. CHARLES K. WILLIAMS, CHIEF JUDGE.
Hon. Hon. ISAAC F. REDFIELD,
Hon. MILO L. BENNETT,         } ASSISTANT JUDGES.
Hon. DANIEL KELLOGG.

---

### STATE v. GEORGE NIXON.

A motion in arrest of judgment, in a criminal case, must be considered in reference to the sufficiency of the indictment, as returned by the grand jury; and, on exceptions to the decision of the county court upon such motion, this court will not notice questions in relation to the regularity of the caption, as they would, if the matter were brought up by *certiorari*, or writ of error.

In the indictment itself the caption may be wholly omitted.

The commencement of an indictment in these words,—" The grand jurors *for the people of the State of Vermont*, upon their oath present," &c.,—is sufficient, on motion in arrest of judgment.

The keeping a house of ill fame is a local offence, and must be described, in an indictment, as committed in a particular town, and the prosecutor is confined, in his proof, to the town, and cannot, as in other cases, prove an offence within the county; but a more particular description of the house is not required.

State *v.* Nixon.

The statute does not make the keeping a house of ill fame an offence, to depend on the motive of the person keeping it; and, on trial upon an indictment for such offence, the prosecutor is not bound to prove that the keeping was for pecuniary profit and gain.

INDICTMENT for keeping a house of ill fame. Plea, not guilty, and trial by jury. The indictment was in these words;—

"STATE OF VERMONT, ⟩ The grand jurors for the people of
'Chittenden County, ss. ⟨ the State of Vermont upon their oath
'present, that George Nixon, late of Burlington in the county of
'Chittenden, on the first day of May, in the year of our Lord one
'thousand eight hundred and forty four, and on divers other days
'and times between that day and the day of taking this inquisition,
'with force and arms, at Burlington aforesaid, in the county of
'Chittenden aforesaid, feloniously a certain house of ill fame, com-
'monly called a bawdy house, resorted to for the purposes of pros-
'titution and lewdness, unlawfully and wickedly did keep and main-
'tain, and in the said house, for filthy lucre and gain, divers evil dis-
'posed persons, as well men, as women and whores, on the days and
'times aforesaid, as well in the night as in the day, there unlawfully
'and wickedly did receive and entertain, and in which said house
'the said evil disposed persons and whores, by the consent and pro-
'curement of the said George Nixon, on the days and times afore-
'said, there did commit whoredom and fornication, whereby divers
'unlawful assemblies, riots, routs, affrays, disturbances and violations
'of the peace, and dreadful filthy and lewd offences in the same
'house, on the days and times aforesaid, as well in the night as in
'the day, were there committed and perpetrated, to the great damage
'and common nuisance of all the good citizens of this State, to the
'evil example of all others in like cases offending, in manifest des-
'truction and subversion of morality and good manners, contrary to
'the form, force and effect of the ninth section of the ninety ninth
'chapter of the last Revised Statutes of this State, and against the
'peace and dignity of the State."

On trial by the county court,—BENNETT, J., presiding,—evi-
dence was given, on the part of the prosecution, tending to sustain
the allegations in the indictment; and the court instructed the jury,
among other things, that, to bring this case within the statute, they
must find that the respondent kept the house complained of as a

common resort for the purposes of prostitution, to be frequented by all such, as were desirous of frequenting such places for the purposes of prostitution; but that it was not indispensably necessary for the government to show, that the house was kept by the respondent for the purposes of pecuniary profit and gain, though such evidence might be important, in enabling the jury to determine whether the house was kept as a common resort.

The jury returned a verdict, that the respondent was guilty; and after verdict the respondent moved in arrest of judgment for insufficiency of the indictment. The court, *pro forma*, overruled the motion. Exceptions by respondent.

*Smalley & Phelps* and *A. Peck* for respondent.

1. It does not appear upon the record, that the indictment was found by any grand jury of the county of Chittenden, impanneled and sworn, or at any term of the Chittenden county court, or at any place within the county. But it purports to have emanated from " the grand jurors for the people of the State of Vermont,"—an informing body wholly unrecognized by the law. By the law of the State a legal indictment can only be found by the grand jury within and for the county, duly impanneled and sworn at a legal term of the county court. That an indictment was so found is a fact, of which the court cannot take notice; and therefore it must appear affirmatively and distinctly upon the record. 4 Com. Dig. 672, and note. 1 Chit. Cr. Law, 326 *et seq.* Cro. Eliz. 490, 751. 1 Ld. Raym. 215. 12 Mod. 88. *People* v. *Guernsey*, 3 Johns. Cas. 265. *Rex* v. *Haycocke*, cited in 10 Petersd. Ab. 312. *Rex* v. *Holliday*, 3 Salk. 187. *Rex* v. *Warre et al.*, 1 Str. 698. *Rex* v. *Fearnley*, 1 T. R. 316. *Rex* v. *Dann*, 2 Eng. Cr. Cas. 424. Bac. Abr., Indictment I. It is insisted, that, under our practice, the caption, being always put on by the grand jury before presenting the bill, and the bill as presented constituting the full record, never afterwards to be amended or increased, necessarily constitutes an essential part of the indictment; that, like the rest of the bill, it cannot be amended, and its defects can be reached by demurrer, or motion in arrest.

2. The local situation of the house complained of is not stated in the indictment, nor is it even sufficiently alleged, that it is situa-

ted in any town, or county.  The averment in the indictment is perfectly consistent with the fact, that the respondent, at Burlington, did keep and maintain a house, &c., situated in New York, or any where else.  But, could this defect be obviated, the indictment is still bad, for not stating the local situation of the house.  This is only the same strictness, that is required in civil actions, as ejectment, &c., and in indictments for other offences.  It is necessary,— 1, In order to apprise the respondent with what particular offence he is charged, in order that he may prepare his defence;—2, That the court may see, whether the indictment and the proof apply to the same offence;—3, To render a conviction or acquittal upon the indictment a bar to a future prosecution for the same act, and to enable the court and the respondent to determine, in the event of a second indictment, whether or not it is for the same act.  *People v. Gates,* 15 Wend. 159.  *Lambert v. People,* 9 Cow. 578.  2 Chit. Cr. Law 40, and note.  *J'Anson v. Stuart,* 1 T. R. 748.  5 Bac. Ab. 77, Indictment G, and cases there cited.

3.  The court erred in instructing the jury, that it was not necessary for the prosecution to show, in order to sustain the indictment, that the house complained of was kept by the respondent for the purpose of pecuniary profit and gain.  The words "keep a house of ill fame," used in the statute, constitute a technical term, applied to a specific common law offence.  The statute is manifestly designed to provide against the commission of that offence; and we must resort to the common law to ascertain of what the offence consists, or in other words, what is the meaning of the term.  All the precedents of indictments for this offence, that can be found, contain an averment, that the house was kept "*for lucre and gain.*" This seems always to have been regarded as material to the description of the offence.  So that the term, "to keep a house of ill fame," has invariably been applied to the keeping of such house for money.  It is the keeping such a house for profit, that it is necessary to guard against by law; and it is against that offence that the statute is directed.

*I. P. Richardson,* State's attorney.

1.  The ninth section of chap. 99 of the Revised Statutes, on which this indictment is founded, is as follows,—"Every person,
10

who shall keep a house of ill fame, resorted to for the purpose of prostitution, or lewdness, shall be punished," &c. The statute does not make the crime consist in keeping the house for the sake of gain. In this indictment the *material* words of the statute are used; and if the proof brings the case within these words, all the remaining phraseology may be rejected as surplusage, and it is not necessary to prove such immaterial allegations. 2 Hawk. P. C. 354, sect. 110.

2. As to the motion in arrest of judgment,—the indictment conforms to the precedents, with a slight variation, to conform to the words of the statute on which it is founded. Davis' Prec. 198, No. 266. Cond. Gen. 315. 2 Chit. Cr. Law 1–35. The grand jury find the indictment; the clerk prepares the caption ; and one caption answers for all indictments found the same term. The caption need not accompany the indictment; it may be supplied at any time, may be amended, or altered, according to the truth, it being mere matter of form. Cond. Generalis 226. *State* v. *Gilbert*, 13 Vt. 647. Cr. Circ. Comp. 83, 126, 523. 2 Hawk. P. C. 348.

The opinion of the court was delivered by

WILLIAMS, Ch. J. This case comes before us on exceptions taken to the decision of the county court at the trial, and also on a motion in arrest of judgment.

On the motion in arrest, which will first be noticed, our attention must be confined to the sufficiency of the indictment, as returned by the grand jury. All questions in relation to the *regularity of the* caption, and which may appear on the records of the county court, cannot be noticed. Criminal cases are not brought before this court by writ of error, in which the whole record is certified, but are brought here by exceptions, and only present such questions as might have been raised in the county court. When the indictment and caption are removed into a higher court by writ of error, or *certiorari*, defects in the caption, as well as in the indictment, may be heard and determined. In the indictment itself the caption may be wholly omitted. This was remarked by the court in the case of *State* v. *Gilbert*, 13 Vt. 647. The caption may be amended, and entirely changed, as was done in the case of *The King* v. *Atkinson*, as found in 1 Wms. Saund. 249,—a case which, we learn, received

much attention, both from the bench and the bar, on account of the rank and station of the respondent, and the disastrous consequences attending upon the conviction. If, in the case before us, the whole record was presented, it would appear, at what term of the court the indictment was presented, that the grand jurors were duly impanneled, sworn and charged, &c.; and thus many of the objections would be obviated, which have been urged in argument.

To the indictment itself the first objection urged is, that it commences,—" The grand jurors for the people of the State of Vermont." This is not the usual form of the commencement of indictments in this State ; but nevertheless, it may be questioned, whether it is not more correct, than the one commonly used. The grand jurors in this State, as well as in Great Britain, are to inquire for all offences in the county, for which they are returned. 2 Hawk. P. C., c. 25, p. 299. They are to present in behalf of and for the sovereign power, which is considered as the prosecutor for all public offences; and hence the style or language of the indictment is not uniform. In England, the form is, " The grand jurors *for our Lord the King* on their oaths present; in New York, "*for the people* " &c. ; in Massachusetts, "*for the Commonwealth.*" In some cases this part of the indictment is used only to designate the jury, who present,—as, " The grand inquest of the United States for the district of Virginia ; "—" The grand jurors of the United States in and for the body of the district of New York ";—" The grand jurors within and for the body of the county " &c.; and this latter is the form usually adopted in this state, and in Connecticut. The better form, I think, is the one used in Georgia, found in 6 Peter's 528,—" The grand jurors sworn, chosen and selected for the county of — in the name and behalf of the citizens of Georgia."

In this State, when we wish to designate the sovereign power, we usually say,—The State of Vermont; but I apprehend it is as well to designate it by the term,—The People. Proceedings to take the forfeiture of grants and charters were heretofore directed to be prosecuted in the name of *The People of the State;* Slade's St. 189; and moreover, in making a record of a case arising on an indictment by a grand jury, these words might be wholly omitted; and, after the caption, which sets forth, that the grand jury were impanneled, &c., it would be sufficient to say, that it is presented, " that "

State *v.* Nixon.

A. B., &c.   We cannot, therefore, attach any importance to this objection to the indictment,——considering it wholly immaterial, whether the indictment commenced by saying, The grand jurors for the county, or for the State, or for the people of the State ; and that either mode would be conformable to approved forms.

The other objections to the indictment we think are of no importance.   The offence is local, and must be described as committed in a particular town ; and the prosecutor is confined, in his proof, to the town, and cannot, as in other cases, prove an offence within the county ;—a more particular description of the house is not required.   In this particular we find the indictment is made conformable to established forms, and a conviction thereon would be a bar to any other prosecution for keeping a similar house in the same town during the time alleged in the indictment.   After a careful perusal of the indictment, we see no reason to doubt its sufficiency.

The exceptions, which were taken to the charge of the court, we think were not well founded.   The statute does not make the keeping a house of ill fame an offence, to depend on the motive of the person keeping it.   It is immaterial, whether it is kept for pecuniary profit and gain, or for other motives, equally bad and more debasing. It is most common, that pecuniary profit and gain, in some way, is the governing motive.   This motive may be inferred, as the evil intent is in other cases ; but the prosecutor is not and cannot be bound to prove the actuating motive of the offender.   The precedents of indictments for this offence usually state, as in this case, that it was for pecuniary profit, or gain.   This, however, need not be proved.   The charge of the court was correct in this particular. We see no reason to doubt, either the sufficiency of the indictment, or the correctness of the proceedings of the county court.

Judgment must be rendered on the verdict and the sentence of the law awarded to the respondent.