[Crim. No. 1461.   Fourth Dist.   Nov. 1, 1960.]

THE PEOPLE, Respondent, v. BESSIE HOOPER et al., Appellants.

Edgar G. Langford and J. Perry Langford for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Ernest E. Sanchez, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendants-appellants Bessie Hooper and Wilda Mae Weatherspoon were jointly charged with the crime of feloniously conspiring and agreeing to commit the crime of keeping a house of ill fame in violation of Penal Code, section 182, subsection 1, and section 315. Five overt acts are alleged: (1) that in pursuance of the objects of said conspiracy, on October 15, 1959, one Wade went to a residence at 2055 Logan Avenue and paid defendant Hooper $6.00 for an act of sexual intercourse and defendant Hooper referred him to a prostitute located therein; (2) that on October 24, 1959, he went there again, was admitted by defendant Hooper and Wade paid defendant Weatherspoon $8.00 for an act of sexual intercourse; (3) that at that time these two defendants

divided the $8.00, Weatherspoon retaining $3.00 and defendant Hooper, $5.00; (4) that on the same day defendant Hooper admitted one Bradford to that residence; (5) that on said day defendant Weatherspoon occupied said residence for the purpose of lewdness and prostitution.

A plea of not guilty to the charge was entered by defendants. A trial without a jury resulted in a conviction.

The evidence shows, generally, that one Wade went to this residence, knocked on the back door and inquired for a girl. Defendant Hooper said she had "real clean" girls there and the price range was from $6.00 to $10. Wade gave her a $10 bill and he received $4.00 in change. He went to a room with one June or Judy. He saw two other girls there. Defendant Hooper invited him back "any time." On October 21, he went there again, knocked and inquired of Mrs. Hooper for another girl. She said they were all gone and told him to return the next day. He returned on several occasions and was told the same thing. On October 24, he was invited in by defendant Hooper and she introduced him to defendant Weatherspoon as the "guy who has been coming by . . . looking for a girl." He was told by defendant Hooper that a room was available for $8.00 per week with a "kitchen and everything." Wade said he would think it over. Then defendant Weatherspoon and Wade retired to a bedroom and she fixed a price of $8.00 and Wade paid it. The money had been previously marked and furnished to Wade by a police officer. Defendant Weatherspoon took the money and left the room. In less than a minute she returned and she and Wade proceeded to commit certain lewd acts in the bedroom and about that time the police officers arrived. Defendant Weatherspoon and Wade dressed themselves. A $5.00 bill, identified as the same bill previously furnished Wade by a police officer, was found on defendant Hooper and three $1.00 bills, which had also been given to Wade by the police, were found in defendant Weatherspoon's purse. Both defendants were arrested and a week or two later June or Judy called Wade and told him the defendants had accused him of being a "stool pigeon" and she said that she did not believe it, and in order for him to clear himself he should sign a statement to that effect. He did sign a document stating "I, Bluford D. Wade, is [sic] not a stool pigeon. I never went to this house to see a girl but to rent a room."

Wade testified he was not promised immunity for testifying, but he did admit that he had been convicted of a felony

(robbery) in 1957 and had been released approximately three months prior to this event.

One Bradford testified he had been in this house on several occasions and Mrs. Hooper said "The girls is [*sic*] busy," but said he had no idea what she meant.

In defense, Mrs. Hooper testified that she purchased the property in 1946 and her husband resided there with her; that there are several extra rooms which were rented to men; that no women were living in the house other than herself; that Wade came one time and wanted to rent a room but she had none vacant; that he returned on several occasions and on October 24 gave her $10 for a room and she returned $2.00 of it to him and that her friend, defendant Weatherspoon, was in the kitchen, was pregnant and was making baby clothes and was in the bathroom when the officers came. She claimed that no money had ever passed between her and defendant Weatherspoon.

On this appeal defendants' counsel concedes that there was sufficient evidence that defendant Hooper kept a house of ill fame within the meaning of Penal Code, section 315, which recites: "Every person who keeps a house of ill-fame in this state, resorted to for the purposes of prostitution or lewdness, or who willfully resides in such house, is guilty of a misdemeanor; . . . ."

He further concedes that the evidence shows that defendant Weatherspoon resorted to this house for the purpose of prostitution and that there was an agreement between defendant Hooper and defendant Weatherspoon in this respect, but he vehemently argues that any such agreement was not shown to be a conspiracy between them to keep a house of ill fame within the meaning of Penal Code, section 182, subdivision 1, and section 315. He contends that there is a clear distinction between the offenses of being an inmate in and in keeping a house of ill fame, and that this distinction is recognized by Penal Code, section 315. The only authorities the defendants were able to find on the subject are *People* v. *Hampton*, 4 Utah 258 [9 P. 508] and *State* v. *Anderson*, 240 Iowa 1090, 1094 [38 N.W.2d 662].

It is then argued that since a conspiracy requires the participation of at least two persons, it follows that while it was shown that defendant Hooper kept such a house of ill fame, it was not shown that defendant Weatherspoon conspired or agreed with her to keep it and it therefore must follow that the conviction of both defendants should be reversed. An

analogy is claimed in the case of *People* v. *Bennett,* 132 Cal. App.2d 569, 581 [282 P.2d 590] and *People* v. *Avas,* 144 Cal. App.2d 91, 96 [300 P.2d 695], where it was held that a person who gives a bribe is not an accomplice of the receiver of the bribe and that a buyer of narcotics is not an accomplice of the seller in a prosecution for a sale of it. (*People* v. *Abair,* 102 Cal.App.2d 765 [228 P.2d 336].)

The attorney general concedes that the question here presented is novel to this state and argues that the Anderson case is at best only persuasive authority and that the question whether a prostitute in a house of ill fame is a coconspirator with the keeper of the house is a question of fact and that the trial court, upon sufficient evidence, found she was such a conspirator and argues that the usual rule limiting the scope of inquiry on appeal to a determination as to whether the trier of fact's decision is supported by substantial evidence applies. (Citing *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

In this connection, it is argued that if defendant Weatherspoon had exercised management over the premises and furnished funds to support this enterprise, in the way of maintenance, repair or rental, she would clearly be guilty of participating in the maintenance of the house; that it was established that she performed acts of prostitution within it; that she well knew of the purpose for which it was being kept and she furnished a share of the proceeds to her codefendant owner for this purpose and that defendant Weatherspoon's service was a necessary element for the success of the establishment and without the funds defendant Hooper received for this service, the institution would have been a business failure.

In *People* v. *Roseberry,* 23 Cal.App.2d 13 [71 P.2d 944], the court defined "keep" as "to conduct or carry on; to maintain . . . ; to manage; continue." It appears to us that the trial court was justified in drawing an inference at least that these defendants agreed to "conduct or carry on and maintain" a house of ill fame. The trial court so concluded upon the evidence presented and the evidence was sufficient to support this finding. (*People* v. *Docherty,* 178 Cal.App.2d 33, 41 [2 Cal.Rptr. 722]; *People* v. *Bompensiero,* 142 Cal.App. 2d 693, 705 [299 P.2d 725]; *People* v. *Moran,* 166 Cal.App.2d 410, 414 [333 P.2d 243]; *People* v. *Jordan,* 24 Cal.App.2d 39, 50 [74 P.2d 519]; *People* v. *Corica,* 55 Cal.App.2d 130 [130 P.2d 164]; *People* v. *Reimringer,* 116 Cal.App.2d 332, 337 [253 P.2d 756]; *People* v. *Lyon,* 135 Cal.App.2d 558, 574 [288

P.2d 57]; *Thompson* v. *Superior Court,* 78 Cal.App.2d 28 [177 P.2d 319].)

Orders granting probation and denying new trial affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied November 22, 1960, and appellants' petition for a hearing by the Supreme Court was denied December 28, 1960.