[Crim. No. 7075.   Second Dist., Div. Three.   Jan. 30, 1961.]

THE PEOPLE, Respondent, v. EDNA CORNELL et al., Defendants; SARAH HAYMOND et al., Appellants.

Walter L. Gordon, Jr., and Joseph T. Forno for Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and David R. Cadwell, Deputy Attorney General, for Respondent.

VALLÉE, J.—By indictment defendants George Noble and Sarah Haymond, together with Ernest J. Exton, Edna Cornell, Jean Edwards, Merle Smith and Rhea Green, were ac-

cused of conspiracy to violate section 337a of the Penal Code in that they engaged in bookmaking and its concomitant offenses. The court, sitting without a jury, found all defendants guilty as charged except Rhea Green. Defendant George Noble appeals from the judgment and order denying his motion for a new trial. Defendant Sarah Haymond appeals from the judgment. Each contends the evidence is insufficient to sustain the finding of guilt.

### The Case Against Noble.

Eleven witnesses testified they knew Noble. Some knew him as Noble, others as Mr. Black, one as Blackie, one both as Black and Green. They had known him for various periods from about a year to eight years. During the times they had known him each of them had numerous wagering transactions with him. Noble had given each of the witnesses a telephone number and a code name such as Ike, GMC, Steve, Barber, or Andy. He had told each to call that number, give the code name, and place his bet. One witness had placed 100 or 200 bets in eight years; another, about 300 bets in two years; another, hundreds of bets in six or seven years. From time to time Noble would settle accounts with the bettor. He had a slip of paper with figures on it indicating the amount due from one to the other and the bettor would pay Noble or be paid by him in cash. At times Noble would change the telephone number the bettor was to call to place a bet.

The last telephone number Jerome Knoll had received from Noble was RE 3-2018. Whenever Knoll called that number a girl answered. On May 16, 1959, Knoll called RE 3-2018. A woman's voice answered. Knoll said: "This is GMC. I want to bet ten to win and ten to show on Royal Orbit in the 8th at Pimlico." Royal Orbit ran in the Preakness, the eighth race at Pimlico Race Track in Baltimore that day. At the same time Knoll placed bets on Ardent Love and Dr. Blacker, horses which ran that afternoon at Hollywood Park in Inglewood, California. Before May 16, 1959 Noble had given Jack Jennings the number AN 1-1556 to call to place bets. On May 16, 1959 Jennings called that number and was told to call RE 2-8392, which he did. He was then told to call RE 3-2018. He called that number, a woman answered, and he placed bets on Royal Orbit and Sword Dancer, running at Pimlico in the Preakness. The number Noble gave Roy Harper was RE 3-2018. On May 16, 1959, Harper called that number. A woman answered and he placed a $10 bet on a horse called First Landing. Noble took Ivan Topance's

telephone number from him and told him to use the code name Ike in placing bets. Later a woman called Topance and gave him a telephone number to call. On May 16, 1959, Topance called RE 3-2018. A woman answered and he placed several bets on the Preakness. At the same time he placed a $50 bet on Lookout Point running in the eighth race at Hollywood Park that day. Seven other witnesses testified to the same general procedure in placing bets with Noble.

Mary Bell suggested to Floda Buckwalter that the latter rent out a room, saying: "I have a friend that I have known for a long time. He's a very, very fine man, and he is in the real estate and insurance business, and he does—and he lives out of town—and he does want to rent a room for an office, and he wanted a place where he could have a phone." Noble then called on Mrs. Buckwalter and rented a room. Noble said: "All I want is a desk room. I am not here very much of the time, but when I am in town, I am in this insurance and real estate business, and I want a place where I can have a phone. I don't want to use your house at all, just want the privilege of the phone." Noble had a telephone installed in the room, visited it three or four times a week from the fall of 1957 to July 1958, remaining about half an hour on each occasion. On one occasion as Noble was leaving the room, he left an envelope with Mrs. Buckwalter and asked her to hand it to defendant Ernest Exton when he came. Later Exton called at her rear door and she handed him the envelope. On several other occasions Exton either visited her home or telephoned inquiring for Noble.

Albert Kapp owed Noble $100 on bets. Noble told Kapp he had a back phone spot in Culver City which he thought was "hot." He needed another spot to put in his back phone and if Kapp would let him use the telephone in Kapp's home he would cancel the $100 debt. Kapp agreed. Noble said a fellow named "Ernie" would be over. A few days later Exton appeared at Kapp's home and thereafter used the telephone about three weeks. During that time Noble went to Kapp's home about once a week and on each occasion left an envelope for Exton. Once or twice Kapp called his own home, identified himself to Exton, and placed bets.

Walter Attebery, a district attorney investigator, arrested Noble at the latter's home on May 16, 1959. Attebery had a warrant of arrest for Noble and a search warrant authorizing him to enter and search Noble's home for bookmaking paraphernalia. Attebery described the home as "a rather palatial place." It overlooked the ocean at Malibu. The grounds

were completely surrounded by a fence with an iron, electric gate. In searching the premises Attebery found two notebooks, an address book, an adding machine, and an adding machine tape torn in two. Noble told the officers the handwriting in the notebooks was his and said he knew the other defendants.

Exton was arrested on May 16, 1959, in a home at 949 West 62d Street in Los Angeles. As the officers entered, Exton was seated at a table on which there was a telephone and betting paraphernalia. A packet of betting markers was on another table. Several betting markers, known in the business as "prior day's action," were in a box wrapped in a National Daily Reporter.

Kapp's place was searched on May 17, 1959. The officers found several scratch sheets wrapped around betting markers, May 11 and 12, 1959, issues of the National Daily Reporter, and an address book.

There was evidence that Exton had called Noble collect many times at the latter's home and that Noble had called Exton. Entries on the betting markers taken from the place where Exton was arrested corresponded with entries in the notebooks and on the adding machine tape found in Noble's home. Various amounts of moneys shown on those betting markers to be collected or owed corresponded exactly with sums appearing on the adding machine tape. Entries on the adding machine tape corresponded with entries on the betting markers found in Kapp's home. In the address book in Noble's handwriting were the words "Ernie" followed by "PL 9-0590," the number at the place where Exton was arrested.

On the arrest of defendants Merle Smith and Edna Cornell, much betting paraphernalia was found in their possession. In a notebook in Cornell's handwriting, the name "Ernie," [Exton], appeared several times; and in an address book there were the names "Exton Ernie," the address "949 West 62nd," the address where Exton was arrested, and "Noble, George, PO 12, Malibu," with the telephone number of Noble's wife. A betting marker taken from defendant Smith was in her handwriting.

Noble did not testify.

Noble concedes there was much evidence that he may have been guilty of violating section 337a of the Penal Code. He contends there was insufficient evidence to establish a conspiracy with the codefendants.

■ A criminal conspiracy is an agreement, express or implied, to commit any crime or to do any of the acts specified by the statute. (Pen. Code, § 182.) ■ A conspiracy may be proved by direct or indirect evidence, or by both. Usually the only way it can be proved is by circumstantial evidence. ■ To establish a conspiracy it is not necessary to prove that the parties met and actually agreed to jointly undertake the criminal action charged. The agreement may be inferred from the declarations, acts, and conduct of the alleged conspirators. ■ If in any manner the conspirators tacitly come to a mutual understanding to commit a crime, it is sufficient to constitute a conspiracy. It may result from the actions of the defendants in carrying out a common purpose to achieve an unlawful end. ■ If it is proved that the defendants, with a view to the attainment of the same purpose, pursued such purpose by their acts, each performing some part thereof, the trier of fact is justified in concluding they were engaged in a conspiracy to effect a common object. These are commonplaces which require no citation of authority.

■ The facts we have related with respect to the case against Noble were proved by evidence. No purpose would be served in reiterating them. The evidence, pieced together, was adequate to establish that Noble was engaged in a conspiracy with some of his codefendants to violate section 337a of the Penal Code. ■ Where there is substantial evidence pointing to a conspiracy, it is not for this court to question its sufficiency.

### The Case Against Sarah Haymond.

■ Miss Haymond was arrested on May 16, 1959 in an apartment above a garage at 2251½ West 29th Street in Los Angeles. The apartment had a window and a door facing a driveway. Three officers knocked on the door of the apartment. Miss Haymond went to the window. The officers identified themselves. Miss Haymond said, " 'What do you want?' And she kept asking, 'What do you want?' 'I haven't done anything,' and words to that effect." The officers banged on the door. Miss Haymond, who was the only occupant of the apartment, opened it. A National scratch sheet was on a sofa. There was a plastic platter about 8 by 14 inches in size by a telephone. A washcloth was in the toilet. A list of code names and a key to the apartment were in Miss Haymond's purse. She told the officers she was visiting at the apartment, the owner was a friend of hers, she was doing nothing but watching television, she was waiting for the owner

of the apartment to come home, and she had been arrested previously for bookmaking.

The number of the telephone in the apartment in which Miss Haymond was arrested was RE 3-2018, the number Noble had given various bettors to call to place bets. During the time the officers were in the apartment the telephone rang 20 to 25 times. One of the officers answered. On most occasions the caller asked for the girl. When the officer replied that she had just stepped out, the caller said he would call back later. On one occasion a male voice said: "This is GMC. I want $5.00 to win on Marianne in the 5th at Hollywood." Marianne was running in the fifth race at Hollywood Park that day. Another male voice called, saying: "This is Radio. I want $10.00 to win and $10.00 to place on Hillsdale in the 7th race at Hollywood Park." Hillsdale was running in the seventh race at Hollywood Park that day.

Cortez Brandon lived in the apartment at 2251½ West 29th Street, in which Miss Haymond was arrested. His telephone number was RE 3-2018. A friend of Brandon asked him if he could bring a girl friend over to his apartment. Brandon said it was all right and gave the friend a key to the apartment. The friend brought Miss Haymond to Brandon's apartment and introduced her to him as Miss Davis. Brandon left for work about 10 a. m. and returned after 6 p. m. He testified he met Miss Haymond only once; he never talked to her about using his apartment; she did not move into it; he did not give her a key to it; he did not know she was using it. At different times while Brandon was in the apartment alone the telephone rang. When he answered, the caller hung up. Many of the code names on the list taken from Miss Haymond at the time of her arrest corresponded with code names in one of the notebooks taken from Noble at the time of his arrest and corresponded with code names on the betting markers found at the time of Exton's arrest.

Miss Haymond did not testify.

Sarah Haymond says the record is bereft of any evidence to indicate she "was part of any plan, scheme, or purpose to carry out an illegal or criminal purpose, to-wit: in violation of Sec. 337 [337a] of the Penal Code." The point is without merit. Miss Haymond surreptitiously occupied the apartment in which she was arrested. She had a key to the apartment, unknown to its owner. She occupied it without his

consent. The telephone number in the apartment was that given to bettors by Noble. A plastic platter was by the telephone and a washcloth was in the toilet. There was evidence that such a platter and cloth are used by bookmakers to facilitate the destruction of evidence. It is common practice for bookmakers to record bets on plastic material so they may be quickly erased. Miss Haymond did not let the officers into the apartment until they banged on the door. It may be inferred she threw the washcloth in the toilet while she delayed admitting the officers. While the officers were in the apartment, the telephone rang almost constantly. Each caller asked for the girl, and when told she had stepped out, hung up. On two occasions callers placed bets with one of the officers. The code names given by the callers were those given to bettors by Noble. A list of code names of bettors was found in Miss Haymond's purse. Many of the code names on the list corresponded with code names in one of the notebooks in Noble's handwriting taken from him at the time of his arrest and corresponded with code names on the betting markers found at the time of defendant Exton's arrest.

The crime of conspiracy may be committed whether the parties comprehend its entire scope; whether they act separately or together, by the same or different means; whether the parties are known or unknown to some of them. (*People v. Hess*, 104 Cal.App.2d 642, 674 [234 P.2d 65].) It is unnecessary that each conspirator see the others or know who all the members are. (*People v. Buffum*, 40 Cal.2d 709, 725 [256 P.2d 317].) The fact that Miss Haymond may not have joined the conspiracy at its inception is of no moment.

One who joins a conspiracy after its formation is liable as a conspirator just as are those who originated it. (*Anderson v. Superior Court*, 78 Cal.App.2d 22, 23 [177 P.2d 315].)

The evidence shows that Miss Haymond was taking bets and that she was in possession of bookmaking paraphernalia. The inference is almost compelled that she knew Noble was engaged in bookmaking, not casually, but as a regular business, and that Exton and others like herself had conspired with him to further his operations. If the court concluded, as it no doubt did, that with this knowledge she saw fit to join with Noble and those others, even though unknown to her, in furthering the unlawful activities of the group, we cannot say the evidence is insufficient to sustain

the implied finding that she was a party to the conspiracy charged. (*People* v. *Buckman,* 186 Cal.App.2d 38 [8 Cal. Rptr. 765].)

There are no other assignments of error.

The judgment and order denying a new trial as to Noble are affirmed. The judgment as to Sarah Haymond is affirmed.

Shinn, P. J., and Ford, J., concurred.