[Crim. No. 8294. Second Dist., Div. Three. June 5, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD JOSEPH CANTU, Defendant and Appellant.

Gladys Towles Root and Eugene V. McPherson for Defendant and Appellant.

Stanley Mosk, Attorney General, Wililam E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—In the first count of an information the defendant Cantu and Noel Mathew Burns and Ronald Joseph Biffath were accused of the crime of conspiracy to violate section 288a of the Penal Code; it was alleged that the offense occurred on or about August 19, 1961. In the second count Cantu alone was accused of having violated section 288a of the Penal Code on or about August 11, 1961. It was further alleged that he had suffered a prior conviction of the crime of forgery, a felony. In a nonjury trial he was found to be

guilty as charged. Having been sentenced to the state prison, the defendant Cantu has appealed from the judgment.

Since the contention of the defendant is that the evidence was insufficient to support his conviction with respect to either count, it is necessary to give a summary of the evidence. The first witness was a boy of the name of Clark. He was 17 years of age. Clark had been granted immunity from prosecution pursuant to the provisions of section 1324 of the Penal Code. He testified that he knew the three defendants. He first met Cantu on August 16, 1961. Cantu asked him if he had a place in which to live and Clark answered that he did not. Cantu, Clark and another young man went to a hotel room. There was a conversation about rent for the room; Cantu said that the rent would be $10 a week and that food would cost $7.00 a week. The defendant Biffath was present. On the next evening in the presence of Biffath and a person named Dennis, Cantu discussed how they could make money by obtaining male customers for homosexual acts. Cantu said the customer would give him $3.00 and the person engaging in the act with the customer would receive $10. Clark further testified that on that day Cantu introduced him to two men with whom he performed homosexual acts and was paid therefor. As to the nature of such acts, Clark testified: "Q. Would they place their mouth on your private part? A. Yes, sir. . . . Q. Would that be on an erected penis? A. Yes, sir." Clark stayed on the premises until about 1 o'clock in the morning of August 18 when he was arrested. He saw the defendant Burns on the premises on the day before he was arrested and he engaged in general conversation with him.

A boy named Dennis, who had also been granted immunity pursuant to section 1324 of the Penal Code, testified that he first met the defendant Cantu on Hollywood Boulevard about August 11, 1961. The witness was 16 years old. He and Cantu discussed the matter of employment for the witness and continued that discussion at Cantu's apartment where they had gone at Cantu's invitation. Cantu talked to the witness about engaging in homosexual relations for money. Cantu told Dennis that he could make $5.00 to $10 for such acts and that he could reside there for $10 per week for rent and $7.00 per week for food. Dennis stayed in the apartment that night. On August 11, he saw the defendant Burns there but did not see the defendant Biffath. On the second day, Cantu introduced the witness to a "trick" with whom the witness

engaged in homosexual acts. Dennis was on the premises for a period of approximately nine days and engaged in about seven or eight homosexual acts. He was arrested about August 18.

Dennis further testified that about the second night he was there he had a homosexual act with Cantu. Cantu got into bed with him. The testimony as to what then occurred was: "Q. Did he 'blow' you at this time? A. Yes."

On cross-examination, Dennis said that he thought the day on which he saw the defendant Burns was the day on which he was arrested.

Leslie F. Jones, a police officer for the City of Los Angeles attached to the vice detail, testified that he entered the living room of the apartment and Cantu introduced him to three persons who were sitting on a couch. They were the defendant Burns, the defendant Biffath and the boy whose name was Clark. Then Cantu took the witness out on the patio and asked him, "Did Dale [the person to whom the officer had made reference in gaining admittance to the apartment] explain to you what you would get for your money? For your $13.00?" Thereafter, Cantu said that for that amount he could "blow" anybody that was present at that address. Cantu further said that he would keep $3.00 and the witness would give $10 to the boy participating. He called the defendant Biffath into the patio after telling the officer, "I have one boy in mind that you might like." Part of Biffath's body was exhibited to the officer. The officer further testified that Cantu "was caressing the parts of his [Biffath's] body which he was describing" to the officer. Cantu also took the officer into a room where Dennis was sleeping and directed the officer's attention to the boy. The officer then went into the living room and sat next to the defendant Burns on the couch and asked Burns what he would get for $13. Burns said he would let the witness "blow" him for this. Burns further said that the witness should give him $10 and Cantu $3.00. All three of the defendants were in the room as was the boy named Clark. The officer then arrested the persons who were in the apartment.

George C. Madsen, a police officer for the City of Los Angeles assigned to the vice detail, testified as to the arrest.

The defendant Cantu offered no testimony in his own behalf.

The accusation embodied in the second count of the information was that the defendant Cantu had committed the

crime of violation of section 288a of the Penal Code in that he had participated "in the act of copulating the sexual organ, to wit, the penis, of him, the said Dennie [Dennis] . . . with the mouth" of Cantu. The nature of the evidence necessary to establish the commission of that offense is set forth in *People* v. *Hunter,* 158 Cal.App.2d 500 [322 P.2d 942], at page 505. Since it is clear that Dennis was an accomplice (see *People* v. *Cox,* 102 Cal.App.2d 285, 286-287 [227 P.2d 290]), a conviction could not properly be had on his testimony unless there was other evidence of a nature sufficient to constitute the corroboration thereof required by law.[1]

In answer to the defendant's contention that there was no corroboration of Dennis' testimony as to the offense charged in the second count, the People assert that the defendant has overlooked the testimony of Officer Jones as to a statement made by the defendant Biffath at the police station after his arrest. But that statement was hearsay insofar as the defendant Cantu was concerned and was received in evidence only as against Biffath. Furthermore, corroboration cannot be found in the failure of Cantu to testify in his own behalf. (See *People* v. *Cox, supra,* 102 Cal.App.2d 285, 287.)

The testimony of the other witnesses amply sustained the inference that Cantu was of a lewd and lascivious disposition, but that was not sufficient because the law requires that the evidence offered in corroboration of the testimony of an accomplice shall of itself tend to connect the defendant with the offense charged. It is insufficient if it requires "the testimony of the accomplice to give it direction to the alleged crime before it can be said to connect the defendant with the commission of that crime." (*People* v. *Reynolds,* 26 Cal.App.2d 219, 222 [79 P.2d 150].) While the supporting evidence was sufficient to arouse a suspicion of Cantu's guilt of the crime charged in the second count, suspicion alone does not constitute the necessary corroboration. (*People* v. *Thurmond,* 170 Cal.App.2d 121, 126 [338 P.2d 472]; *People* v. *Reynolds, supra,* 26 Cal.App.2d 219, 222.) Apropos is the following statement made in the *Thur-*

[1]Section 1111 of the Penal Code is as follows: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

*mond* case (170 Cal.App.2d, at page 124): "As to the above evidence, the most that can be said is that it indicates that defendant had the opportunity to commit the offenses, but mere opportunity has never been held sufficient as corroboration. (*People* v. *Robbins,* 171 Cal. 466 [154 P. 317].)" Consequently, with respect to the second count the conviction cannot stand.

In the first count of the complaint it was charged that Cantu, Burns and Biffath did "conspire, combine, and agree together to commit the crime of Violation of section 288a, Penal Code." One of the three overt acts alleged in the information was as follows: On August 16, 1961, defendant Edward Joseph Cantu met with . . . Clark [the full name of the minor is omitted in this opinion] and they had a conversation." The defendant Cantu contends that the evidence was insufficient to sustain his conviction of the crime of conspiracy and he asserts that "the conspiracy was not proved prior to the admission into evidence of any declarations." But as will be shown, the conviction of Cantu of the crime of conspiracy has ample support in the record.

■ This court said in *People* v. *Cornell,* 188 Cal.App.2d 668 [10 Cal.Rptr. 717], at page 673: "A criminal conspiracy is an agreement, express or implied, to commit any crime or to do any of the acts specified by the statute. (Pen. Code, § 182.) ■ A conspiracy may be proved by direct or indirect evidence, or by both. Usually the only way it can be proved is by circumstantial evidence. ■ To establish a conspiracy it is not necessary to prove that the parties met and actually agreed to jointly undertake the criminal action charged."

■ In the present case, the boy Dennis met the defendant Cantu on Hollywood Boulevard about August 11, 1961, and went with him to Cantu's apartment. Dennis saw Burns there. On the next day Cantu introduced Dennis to a man with whom the boy engaged in homosexual acts for which he was paid money. This was done pursuant to an arrangement whereby Cantu and the boy would carry on such activities. The other boy, Clark, became a member of the undertaking when Cantu brought him to the apartment on August 16, 1961. Clark testified that he engaged in homosexual acts, including that prohibited by section 288a of the Penal Code, with men to whom he was introduced by Cantu. He saw Burns on the premises. When Officer Jones was permitted

to enter the premises, Cantu introduced him to Clark and to the defendants Burns and Biffath, all three of whom were sitting on a couch. The incident of the exhibition of part of Biffath's body has already been noted. The officer's conversation on that occasion with the defendant Burns as to what act he would perform for money has heretofore been related.

It was a reasonable inference that the defendant Cantu and the two boys were engaged in a conspiracy to effect a common objective, namely, the commission of acts in violation of section 288a of the Penal Code, their motive being thereby to obtain money. (Cf. *People* v. *Hooper*, 186 Cal.App.2d 25, 28 [8 Cal.Rptr. 619].) It was also a reasonable inference that at some time prior to their arrest the defendants Burns and Biffath had become parties to the understanding. ▆ One who joins a conspiracy after its formation is liable as a conspirator just as are those who originated it. (*People* v. *Cornell, supra,* 188 Cal.App.2d 668, 675.) ▆ Cantu's meeting and conversation with Clark on August 16 clearly constituted activity undertaken by Cantu to further the object of the conspiracy which had already been formed; the evidence thereof was sufficient to constitute proof of one of the overt acts alleged in the information. (See *People* v. *Saugstad,* 203 Cal.App.2d 536, 549 [21 Cal.Rptr. 740].) ▆ Participation in that overt act by all persons who were then members of the conspiracy was not necessary. (See *People* v. *Cuda,* 178 Cal.App.2d 397, 412 [3 Cal.Rptr. 86]; *People* v. *Benenato,* 77 Cal.App.2d 350, 356 [175 P.2d 296].) ▆ The testimony of Officer Jones showed that both Burns and Biffath engaged in activity for the purpose of furthering the object of the conspiracy. There was substantial evidence to support the conviction of the defendant Cantu of the charge of conspiracy.

▆ The determination just expressed is not affected by the fact that Clark and Dennis were not named in the information as coconspirators. While it is clear that there was one conspiracy in which all five persons participated, the defendant Cantu cannot complain because the two minors were not prosecuted jointly with him in this case. (See *People* v. *Calhoun,* 50 Cal.2d 137, 143 [323 P.2d 427]; *People* v. *Gilbert,* 26 Cal.App.2d 1, 25-26 [78 P.2d 770]; *People* v. *Sacramento Butchers' Protective Assn.,* 12 Cal.App. 471, 483 [107 P. 712].) ▆ Moreover, the fact that it was alleged in the information that on or about August 19, 1961, the defendants Cantu, Burns and Biffath conspired to commit the crime

of violation of section 288a of the Penal Code, whereas two of the overt acts are alleged to have occurred before August 19, 1961,[2] is not a matter of which the defendant Cantu may take advantage on this appeal. ▪ In the first place, he did not demur to the information and, therefore, waived any claim of uncertainty. (See *People* v. *Warford,* 191 Cal.App. 2d 346, 350-351 [12 Cal.Rptr. 565].) ▪ But, in any event, ordinarily the precise time at which an offense was committed need not be alleged in the information. (Pen. Code, § 955; see *People* v. *Barreras,* 181 Cal.App.2d 609, 614 [5 Cal.Rptr. 454].) Furthermore, it was alleged in the information that the overt acts were committed by defendants Cantu, Burns and Biffath "pursuant to and for the purpose of carrying out the objects and purposes of the aforesaid combination, agreement, and conspiracy." The reasonable inference to be drawn from the pleading is that the conspiracy was one which was claimed to have come into existence at some time earlier than August 19, 1961. (See *Schnautz* v. *United States,* 263 F.2d 525, 529[3]; *Goldberg* v. *United States,* 297 F. 98, 101.) ▪ As stated in *People* v. *Roberts,* 40 Cal. 2d 483 [254 P.2d 501], at page 486: "It is only required that the pleading be 'in any words sufficient to give the accused notice of the offense of which he is accused.' (Pen. Code, § 952.) Notice of the particular circumstances of the offense is given not by detailed pleading but by the transcript of the

---

[2]In addition to the overt act alleged in the information as to which reference has been made, one of the overt acts alleged was: "On August 11, 1961, defendant Edward Joseph Cantu met with Dennis [the full name of the minor is omitted in this opinion] . . . and they had a conversation." The other overt act alleged was that on August 19, 1961 (the date of the arrest) the defendant Cantu, in the presence of the defendant Burns and Clark, "did fondle the body of defendant Ronald Joseph Biffath."

[3]In the *Schnautz* case, it was stated (263 F.2d, at page 529): "In a motion to dismiss the indictment the appellant urged that the indictment does not definitely allege when the conspiracy was entered into, and that the indictment charges that the overt acts were committed prior to the formation of the conspiracy. The purpose of an indictment is to so inform the accused of the offense with which he is charged as to permit him to make his defense and, if subsequently charged with the same offense, to permit him to plead double jeopardy. *Duke* v. *United States* (5th Cir. 1956) 233 F.2d 897; 4 Wharton's Criminal Procedure, § 1724, p. 506. If, in an indictment for conspiracy, there is any vagueness in the averment as to the time of its formation, the time may be fixed and made certain by a reference to the allegations of overt acts. *Toliver* v. *United States* (9th Cir. 1955) 224 F.2d 742; *Rubio* v. *United States* (9th Cir. 1927) 22 F.2d 766, certiorari denied 276 U.S. 619 [48 S.Ct. 213, 72 L.Ed. 734]. The sufficiency of an indictment is to be tested by practical rather than technical considerations. *Duke* v. *United States, supra.*"

evidence before the committing magistrate. . . ." (See also *People* v. *Lamb*, 204 Cal.App.2d 255, 262-263 [22 Cal.Rptr. 284].) ▇ In the present case the defendant Cantu was content to stipulate that the cause could be submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing. He offered no evidence on his own behalf. That he was fairly tried and convicted on the charge of conspiracy is the only conclusion which finds support in the record.

▇ The information contained an allegation that the defendant Cantu had suffered a prior conviction of the crime of forgery, a felony. The defendant Cantu asserts that he was "sentenced . . . on the prior conviction" although the allegation was not proven. In fact, it does not appear that at the time of the entry of the plea as to each of the counts any reference was made to that allegation. The record establishes that the trial court made no determination of that matter and the judgment contains no reference to the prior conviction. Consequently, there has been no determination of fact or law by the trial court with respect to that allegation which has adversely affected the defendant. He has suffered no prejudice.

With respect to the conviction of the defendant Cantu of the crime of violation of section 288a of the Penal Code, as alleged in the second count of the information, the judgment is reversed. With respect to the conviction of the defendant Cantu of the crime of conspiracy to violate section 288a of the Penal Code, as alleged in the first count of the information, the judgment is affirmed.

Shinn, P. J., and Files, J., concurred.