[Crim. No. 6864. Second Dist., Div. Four. May 29, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. LYSS D. LAMB et al., Defendants and Appellants.

Sigmund Dembowski and Eddie Oblas, in pro. per., Wendell P. Hubbard, Al Mathews and David Darr for Defendants and Appellants.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—This case involves an appeal from judgments of conviction of a number of local executive officers of a national concern and of certain contractors, all of whom it was charged conspired to commit grand theft and to cheat and defraud by criminal means. The victim, McKesson and Robbins, Inc., a corporation, herein termed the "Company," engaged in the wholesale distribution of drugs, liquor and chemicals.

Defendant Rollin B. Rucker, district vice president of the Company's South Pacific District, comprising a number of divisions, was found guilty of count one, conspiracy.

Defendant Sigmund C. Dembowski, accountant for the North Hollywood division, was found guilty of count one, conspiracy, and of counts 8 and 15, grand theft.

Defendant Robert E. Gangwer, division manager of the North Hollywood division, was found guilty of count one, conspiracy, and of counts 3, 5, 7, 11 and 12, grand theft.

Defendant Cecil M. Blackhurst, division manager of the Long Beach division, was found not guilty of count one, conspiracy.

Defendant Robert Clasen, operational manager of the North Hollywood division, was found guilty of count one, conspiracy, and of counts 6 and 9, grand theft.

Defendant Ralph M. White, a modernization specialist, assigned to the various divisions where needed, pled guilty to count one, conspiracy, and count 19, grand theft.

Defendant Lyss D. Lamb, a general contractor, was found guilty of count one, conspiracy, and count 16, grand theft.

Defendant Eddie Oblas, a plumbing contractor, was found guilty of conspiracy in count one.

Defendants Gangwer, Rucker, Dembowski, Lamb, Clasen and Oblas each moved for a new trial. The motions were denied. From the orders denying their motions for new trial and from their judgments of conviction respectively, defendants Gangwer, Rucker, Dembowski, Lamb and Oblas appeal.

A summary of the factual situation presented in this lengthy trial is as follows:

Oblas and Lamb were among certain contractors called upon by the Company to do plumbing and general contracting for the Company in its modernization program under which certain improvements were being made from time to time in various drugstores served by the Company.

Defendant Rucker had overall supervision of the affairs of the Company in the district and defendant White had direct charge of the modernization program under Rucker's direction. The other defendants (other than the contractors named), were all executive officers in the various divisions. With the cooperation of Rucker, Dembowski, the accountant, and White, work was done from time to time at the homes of the various executives, the bills for which were included in bills for other work done by the contractors on various Company stores. In certain instances bills were put through

against the Company without any work whatever having been done for the Company. In other instances, legitimate Company bills were padded to include items sold or work done for the benefit of the individual executives. In each instance the bills were approved by defendant White and by the accountant Dembowski.

Apparently, the mechanics for the subsequent looting of the Company had its inception in 1955. Rucker called White to his office and stated that he wanted to fix up the old office on the balcony of the building. The amount of the invoice was $764.12. Rucker complained to White that the amount was over the estimate that he had on it and that there was other work to be done in the room; that the amount charged would have to be covered within the local organization. White and Rucker agreed it would be charged to the modernization department. White placed his initials on the back of the invoice. White took the bill to Dembowski, the accountant, and told him it was the invoice covering the room on the balcony and that Rucker had agreed that it would be charged to the modernization department. Dembowski asked how this was to be done and White replied "I don't know, you are the accountant." Dembowski said it could not be charged to the department, but would have to be charged to one of White's modernization accounts on one of the drugstores if he wanted to cover up the bill. White said, "Mr. Rucker wanted it taken care of, so let's take care of it." The job was charged to the D and D Drug Company at Redondo Beach and the Company paid the $764.12.

In 1956, the cost of painting defendant Gangwer's house, amounting to $480 was included with the cost of the painting of a Company warehouse. The total for the two jobs was $1221.80, for which the painting contractor received a Company check. One of the signers thereof was Gangwer.

In 1956, a bill for $711.67 for the installation of some lighting around Gangwer's home was included with a bill for $14.03 for work done on a Company warehouse, which was paid for by Company check. In 1956, an all-electric kitchen was installed in Gangwer's home, together with certain cabinet work. The cost was split up into two purchase orders of $685 and $691.26, one item being charged for the modernization program for one drugstore and the other item being charged to a second drugstore and paid for by the Company.

In 1957, certain electric lights and other installations were installed in Gangwer's home totaling $1,115.61. This work

was charged to a job on Chevy Chase Pharmacy, and paid for by the Company. Also, in 1957 certain cabinet work and plumbing was installed in Gangwer's house and charged to a drugstore with the total cost of $677.25 being paid for by the Company. In that same year Gangwer had certain carpeting laid over foam rubber in his home at a total cost of $1,468.81, only $500 of which was paid for by Gangwer himself. White spoke to Gangwer about the bill and Gangwer said "Go ahead and pay it." White called defendant Lamb, the contractor, and asked if he would be willing to take Gangwer's bill and pay it and they would give Lamb a purchase order on work supposedly done on a drugstore to cover the cost of it. Lamb advised White he would handle the bill, but wanted a 10 percent override on the amount of the bill. With this understanding the remainder of the cost of the carpeting, $968.81, was covered by Lamb through a Company purchase order "for plans and engineering on building for Adam Square Pharmacy, Glendale, in the amount of $1093.81" and with supporting invoices it was approved and paid.

In 1957 an all-electric kitchen and other improvements were installed in the home of defendant Dembowski, the accountant, the cost of which was charged to the Company with White's approval. A check for $600 signed by Dembowski and charged to the Company was paid to an electrical supply company. In this same transaction an additional $856.59 for work in Dembowski's home was charged to a drugstore account in Nevada and paid for by the Company.

Mr. Mulherin, a certified public accountant, was retained by the Company to conduct an investigation in 1957. He testified that he asked defendants Gangwer, Dembowski and Rucker individually concerning personal items which had been paid for by the Company such as lighting, plumbing, cabinet work and carpeting for Gangwer, stoves and electrical work for Dembowski, house painting and installation of a soda fountain, barbecue and television tables for Rucker. He said that in each instance these defendants admitted having received the services and materials without personal charge to them. In general, their responses indicated that they had rationalized the receipt of these benefits as being gratuities from grateful contractors regularly engaged by the Company in its modernization program.

The Company's investigator, Mr. Mulherin, testified that he asked defendant Lamb concerning the invoices for work

done by the latter for individual defendants but billed to the Company. He stated that Lamb responded that he had done the work represented in each of the invoices and that he did not know how defendant White handled the charging and payment for the work. Lamb asserted that he would bill the work as instructed by White. Lamb further stated to Mr. Mulherin that he had delivered sums of money to defendant White from time to time and had recouped them through invoices rendered by subcontractors to the Company.

In December 1957, Mr. Reitz, an employee of the Company, had a conversation with defendant Oblas, the other contractor who was prosecuted in this proceeding. Oblas acknowledged that certain paid invoices taken from the files of the Company were his; that the work described in the invoices had been done by him but not always at the particular drugstores whose names were written on the face of the invoices; that most of the particular invoices covered work done at the homes of defendants Gangwer and Rucker, officers of the Company; that he had received instructions on each one of the transactions, either from White or Gangwer as to how to bill the invoices.

On January 3, 1958, Mr. Mulherin and Mr. Reitz had another conversation with defendant Oblas. Oblas handed a document to them which read as follows:

"Plumbing work done at Mr. Rucker's house, Total, $2881.00
Plumbing work done at Mr. Lothrop's house, Total, 2345.00
Plumbing work done at Mr. Rogers' house, Total, 840.00
Plumbing work done at Mr. B. Gangwer, Total, 4494.17
$10,560.17"

The document further shows orders were received from defendant White and paid by Company check; none of the work was paid for by the officers themselves other than $150 by Lothrop.

Each of the appealing defendants contends the indictment fails to set forth acts or omissions constituting a public offense. They assert that Penal Code section 952 is unconstitutional in that it denies procedural due process. These contentions are without merit.

A comparison of the indictment before us with that considered by the court in the cases herein cited will indicate that the indictment fulfilled the requirements of the law and was clearly sufficient. The essentials of a valid accusation are commented on in *People* v. *Gordon,* 71 Cal.App.2d 606, 610-611 [163 P.2d 110]: "Under our simplified forms of

criminal pleading it is not necessary to detail the act which each of the conspirators is to perform in the execution of the enterprise. [Citing case.] . . . The pleading is sufficient if it sets forth in intelligible language a notice of the offense to be charged. The accused is not entitled to the description of the 'particular circumstances thereof' which he may get from his copy of the testimony given before the grand jury or the committing magistrate and furnished to him. [Citing case and code sections.]

"The gist of the crime of conspiracy is the unlawful agreement to commit a crime and an overt act done in furtherance of the agreement. [Citing case.] No indictment is insufficient by reason of any defect or imperfection of its form so long as no substantial right of the accused is prejudiced upon the merits of the case. (Pen. Code, § 960.) Section 952, Penal Code, as amended in 1927 provides that it shall be sufficient if its language gives notice to the accused of the offense charged against him. [Citing case.] The validity of an indictment cannot be questioned when drawn in ordinary and concise language accusing the defendant of a specific public offense, omitting details, so long as he is furnished with a copy of the accusatory testimony. [Citing case.] The form of indictment is not important so long as it presents in sufficient substance the facts constituting the crime charged, and it makes no difference whether the indictment be regarded 'substantially and actually as a charge of substantive crime or as a charge of conspiracy.' [Citing case.]''

In asserting that Penal Code section 952 is unconstitutional the burden is upon the defendants to show wherein such section denies "procedural due process." As stated in *People* v. *Black,* 45 Cal.App.2d 87, 96 [113 P.2d 746]: "One who seeks to raise a constitutional question must show that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation. [Citing cases.]''

In count one of the indictment before us twenty separate overt acts are alleged to have been committed in furtherance of the conspiracy. The evidence adduced sustains the charge of conspiracy as having been participated in by all of the defendants.

As noted in *People* v. *Kobey,* 105 Cal.App.2d 548, 562 [234 P.2d 251], "Virtually the only method by which a conspiracy can be proved is by circumstantial evidence—the

actions of the parties as they bear upon the common design. It is not necessary to show directly that the parties actually closeted themselves, attained the proverbial meeting of the minds and agreed to undertake the unlawful acts. [Citing case.] ▮ It is a familiar principle of the law that in deriving whether an agreement was unlawful the triers of the fact may consider the events that occurred 'at or before' or 'subsequent' to the formation of the agreement. From the proof of the occurrences beforehand and at the time of the agreement linked with evidence of the overt acts a jury may determine that a criminal conspiracy was formed. [Citing cases.] The major portion of the evidence might consist of the conversations and writings of the conspirators or it may consist of the overt acts done pursuant to the conspiracy.''

▮ Defendants further contend that the joining of all of them in one jury trial resulted in a deprivation of due process and was inconsistent with Penal Code sections 954 and 1098. With this we disagree. Penal Code section 954 reads in part: ''An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court. . . .''

Section 1098 of the Penal Code reads in part: ''When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials.'' ▮ A reading of the section in full will indicate the broad discretion vested in the court to order separate or joint trials. A review of the proceedings before us indicates no abuse of that discretion. ▮ As pointed out in *People* v. *King*, 30 Cal. App.2d 185, 206 [85 P.2d 928], ''It is not an abuse of discretion to refuse to grant a motion for a severance because damaging testimony or the admission or confessions of a codefendant might be admitted in evidence against such codefendant, and not be admissible against the moving defendant. [Citing cases.]''

Defendants also contend that the verdict was based upon the uncorroborated testimony of accomplices. The testimony of defendant White concerning the conspiracy and the activities of its members was corroborated by the records of the Company; also, by the testimony of contractors and suppliers, in addition to those who were prosecuted in the case, who furnished the various improvements and materials. There was further evidence by the defendants themselves that they did in fact receive the improvements and did not pay for them. From all of this evidence it can be seen that the verdicts of the jury were not based upon the uncorroborated testimony of accomplices.

Defendants next contend the evidence was insufficient to support the verdicts. This contention is also without merit. The crimes involved here continued over a long period of time, they followed the same general pattern and from time to time other employees were asked to join the operation. Defendants White, Rucker, Gangwer and Dembowski held executive positions with the Company, of which they took advantage. They falsely represented that work and materials had been furnished to the Company in the modernization program. They falsified entries in the Company's books, indicated therein that improvements had been made in various drugstores which in fact had not been done. They charged the Company for services, improvements and materials from which only the officers themselves had benefited. The jury was entirely justified in its finding that a conspiracy existed among these officers and contractors to cheat and defraud the Company.

Clearly the evidence adduced in the case at bar meets all the tests laid down by the court in *People* v. *Massey,* 151 Cal.App.2d 623, 652 [312 P.2d 365]: "From the very nature of the stealth generally involved in the crime of conspiracy, it is not necessary to prove that the parties came together and reached a formal agreement. [Citing case.] In cases such as the one now engaging our attention, involving as it does, the claim of a conspiracy to defraud, it can hardly be expected that direct evidence of such a conspiracy can be obtained because such evidence could ordinarily be secured only in the event one of the conspirators admitted guilt. . . .

'The law recognizes the intrinsic difficulty of proving a conspiracy. The allegations with reference to conspiracy are treated as matters of inducement leading up to a more particular description of the acts from which conspiracy may

be inferred. . . . *The conspiracy may sometimes be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.'* . . . ▇ [T]he purpose of the evidence in conspiracy cases is to establish a mental state—an illicit concord of minds of several persons. The jury is entitled to consider every fact which has a bearing on the ultimate fact in issue.

▇ There is no valid objection to evidence which tends to show, step by step, the gradual formation of a criminal concord in the minds of those accused, merely because the evidence begins at a time long anterior to the wrongful meeting of the minds. "It is necessary only that the evidence, in all its parts, tends to prove the formation of the conspiracy . . . 'From the nature of the crime itself it is difficult to prove a criminal conspiracy by direct evidence, and such conspiracies are almost always proven by circumstantial and "piecemeal" evidence' . . ." [Citing cases.]' "

▇ Defendants further contend the court erred in failing to pass fully upon the motions for a new trial; however, where the evidence in a criminal proceeding is amply sufficient to sustain the verdict a motion for new trial for lack of proper evidence is properly denied. (*People* v. *Curry,* 103 Cal. 548 [37 P. 503].)

Defendants also contend the court erred in giving and refusing certain instructions. A review of all of the instructions given and of those refused shows no error. The situation here is as was stated in *People* v. *Steccone,* 36 Cal.2d 234, 240 [223 P.2d 17]: "The requested instructions were either covered in substance by the instructions given or failed to state correctly the proposition of law involved, and as so classified, no purpose would be served in discussing them separately as listed by appellant."

A review of the entire record of this lengthy trial discloses that the trial court fully, fairly and clearly instructed the jury upon all of the legal points involved.

Defendants further contend that the prosecutor was guilty of prejudicial misconduct both in his opening and closing arguments to the jury. ▇ The latitude allowed the prosecutor in argument is stated in *People* v. *Mason,* 184 Cal. App.2d 317, 364 [7 Cal.Rptr. 627]: "A prosecuting attorney has a wide range in which to state his views as to what the evidence shows and the conclusions to be drawn therefrom [Citing case], and he may comment as to the manner in which a witness testifies. [Citing case.]"

We have reviewed the arguments of the deputy district attorney in this case and find that they did not exceed the permissible bounds.

The order denying the motions for a new trial and the judgments of conviction appealed from are affirmed.

Burke, P. J., and Balthis, J., concurred.

Petitions for rehearings were denied June 13, 14, and 18, 1962, and petitions of appellants Lamb, Dembowski, Gangwer and Rucker for hearings by the Supreme Court were denied July 25, 1962. Dooling, J.,* participated in place of Traynor, J.

*Assigned by Chairman of Judicial Council.