[Crim. No. 7312. Third Dist. June 17, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH ROBERT RAINVILLE, Defendant and Appellant.

## COUNSEL

Smith, deBruin & Yee and Jimmy N. Yee for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Marjory Winston Parker and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GOOD, J.***—Defendant appeals from the judgment (order of probation) entered upon the jury's verdict finding him guilty of presenting a fraudulent claim (Pen. Code, § 72) and of perjury (Pen. Code, § 118).

On February 29, 1972, defendant signed and subsequently submitted to the Sacramento County Assessor's office a claim for the California homeowner's property tax exemption on his residence in North Highlands. An exemption was granted. Defendant was employed by the post office as a letter carrier. The claim form D submitted contained a statement to the effect that for the 12 months ending June 30, 1972, neither the applicant nor anyone with whom he shared ownership of the dwelling received from the state, county or city any assistance (other than senior citizens' property tax assistance) containing an allowance for property tax on the dwelling. The instructions, called to an applicant's attention in the claim form, clarified the above statement by noting that Aid to Families with Dependent Children (AFDC) was one of the programs containing an allowance for property tax. A copy of the instructions was sent out with the 1972 claim forms. The claim form was signed by defendant under penalty of perjury that all statements contained therein were true.

On June 6, 1971, defendant had been married to Dema Elaine Clifton (hereinafter referred to as Dema) by whom he had had two children. From July 1971 to May 1972, Dema was receiving welfare assistance under the AFDC program. In filling out the claim form, defendant neglected to include his wife's social security number in the space provided for such number where the dwelling was the principal residence of the applicant and spouse on March 1, 1972, when either or both of them were buying

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

the dwelling on that date. Instead, defendant entered only his social security number in the alternate space provided on the form. Both defendant and his wife were then residing at the home in question. Defendant had filed for and received the homeowner's exemption in 1970 and 1971. When he reported his income for tax purposes in 1970, 1971 and 1972, he filed a joint return with Dema and listed her social security number.

Prior to becoming a postal employee, defendant sold life insurance and then bought and sold homes, researching title and doing the necessary paper work in buying equities. While a postal employee, defendant was able to read and comprehend the postal regulations and interpret and use them in the course of his employment.

When questioned about the exemption by an investigator in the district attorney's office, defendant, referring to the propriety of his exemption claim, stated that he was safe for the period during which he was not married, but for the three months of the year in question, "I guess I'm dead."

In his defense, defendant testified that he had initially bought his home when he was not married; that he did not rememeber receiving or reading the instruction form or the explanation thereon of the crucial statement on the claim form and of exclusions from eligibility to claim the exemption; that he did not know he was doing anything wrong in claiming the exemption; and that he did not put his wife's social security number on the claim form because he thought the property was his separate property. He also claimed he did not know he was in trouble until he read a newspaper article stating that persons receiving welfare cannot claim the exemption.

I. ██ Defendant contends that the court erred in failing to instruct the jury, *sua sponte,* on the issues of whether his wife had acquired ownership in defendant's property or whether the property was defendant's separate property; whether or not defendant received aid payments during the period in question; and whether or not there had been a transmutation to separate property by mutual agreement. Defendant assumes these are issues raised by the evidence.

Contrary to defendant's basic assumption, there was no issue before the jury as to whether or not the home in question was defendant's separate property. There was no evidence of any interspousal agreement as to separate ownership. The uncontradicted evidence established that at the time defendant applied for and received the homeowner's tax exemption, he

was married to Dema and was paying for the home with money that he was earning at that time, and that Dema was receiving AFDC assistance.[1]

■ Earnings of the husband during marriage are the parties' community property. (*People* v. *Lockett* (1972) 25 Cal.App.3d 433, 439 [102 Cal. Rptr. 41].) The community has an interest in property acquired by one spouse prior to marriage where community funds are used to pay part of the purchase price. (*In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 256 [105 Cal.Rptr. 483]; *Bare* v. *Bare* (1967) 256 Cal.App.2d 684, 689-690 [64 Cal.Rptr. 335].) ■ Thus, there is no question that Dema "shared ownership" of the dwelling following her marriage to defendant. The issue before the jury was not one of the type of ownership defendant and Dema held in the property, but was whether defendant *knew* that Dema had an ownership interest in the property and, in violation of Penal Code section 72, intended to defraud the county when he applied for the homeowner's tax exemption, and, in violation of Penal Code section 118, wilfully made a statement under penalty of perjury knowing it to be false or in ignorance of the truth or falsity thereof.

Under Penal Code section 72, a defendant must have the specific intent to defraud the county, while the specific criminal intent for perjury under Penal Code section 118 is the intent to swear falsely. (*People* v. *Walker* (1967) 247 Cal.App.2d 554, 559 [55 Cal.Rptr. 726]; *People* v. *Guasti* (1952) 110 Cal.App.2d 456, 464 [243 P.2d 59]; *People* v. *Haydon* (1951) 106 Cal.App.2d 105, 107 [234 P.2d 720].) Defendant testified in part that he had purchased the residence in question before he was married and had taken title in his own name and that he did not include his wife's social security number on the homeowner's tax exemption form because he felt the property was his separate property, and that therefore his wife was not buying the property and was not to be considered. In essence, defendant was trying to establish that he did not have the requisite intent to deceive the county or to perjure himself since he in good faith believed that his wife did not share ownership of the dwelling with him. By asserting that he did not know his claim to be false, defendant was seeking to negate the elements of specific intent to defraud and to swear falsely as essential elements of the crimes charged.

We do not accept the proposition that a special instruction pointing

---

[1]Evidence was also received to the effect that defendant stated he used welfare money to buy steaks for himself and his wife. A jury could reasonably infer that if defendant was using welfare money to purchase food, he could be using the welfare money to purchase the home. Even if this inference contradicted the evidence that defendant was paying for the home with money he was earning at the time, such inference would not help defendant's contention on appeal.

out to the jury the fact that defendant has presented evidence negating criminal intent which, if believed, would result in acquittal is the type of instruction on defenses which the court has a duty to give *sua sponte*. (See *People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913].) The substance of such instruction was adequately covered in the instructions concerning the necessity of finding intent to defraud and intent to swear falsely. If the jury had believed defendant's story, then under the instructions given, it could not have found the requisite intents for the crimes charged. By finding defendant guilty as charged, they had to reject defendant's version of the matter. The circumstantial evidence fully supports the jury's implied findings of knowledge and intent. Therefore, it is not reasonable to conclude that an additional instruction on the subject of defendant's knowledge would have resulted in a different verdict. Consequently, there could be no prejudicial error. (See *People* v. *Mayfield* (1972) 23 Cal.App.3d 236, 245 [100 Cal.Rptr. 104]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

II. ██ Defendant contends that California's homeowner's property tax exemption violates the equal protection clause of the Constitution by precluding those who are receiving public assistance from claiming the exemption.

The defendant is not a party who, in this case, can challenge the constitutionality of the homeowner's tax exemption. The United States Supreme Court has held that where false statements are voluntarily filed to obtain benefits from or mislead the government and charges are filed under general statutes prohibiting deceitful or fraudulent conduct, there is no defense in the alleged unconstitutionality of the statute through which the benefit had been sought. (*Bryson* v. *United States* (1969) 396 U.S. 64 [24 L.Ed.2d 264, 268, 271, 90 S.Ct. 355]; *Kay* v. *United States* (1938) 303 U.S. 1 [82 L.Ed. 607, 612, 58 S.Ct. 468]; *United States* v. *Kapp* (1937) 302 U.S. 214 [82 L.Ed. 205, 208, 58 S.Ct. 182].) The statutes in question in the federal cases were general statutes prohibiting knowing falsifications and the making of false statements or representations. (*Bryson* v. *United States, supra,* at p. 65, fn. 1 [24 L.Ed.2d at p. 267]; *United States* v. *Kapp, supra, at* pp. 215-216 [82 L.Ed. at p. 207].) Penal Code section 72 falls within this category of statutes.

At the time defendant filed his claim the homeowner's exemption was in fact in full force and effect. If a court now or in the future determines that the homeowner's exemption is unconstitutional, such holding would not change the fact that, when defendant filed his application, the county was authorized to, and in fact did, grant the claim of exemption. In the

event that such a holding were to be applied retroactively (cf., *Westbrook v. Mihaly* (1970) 2 Cal.3d 765, 800 [87 Cal.Rptr. 839, 471 P.2d 487]), it could benefit only those who had been denied equal protection, i.e., persons who had been denied the exemption because they received welfare benefits that included a tax allowance. Defendant is not within the class that would be so benefited.

Further, in California it has been held that a party who wishes to attack the constitutionality of a statute must show that he is a party aggrieved by the statute's operation. (*Estate of Horman* (1971) 5 Cal.3d 62, 77-78 [95 Cal.Rptr. 433, 485 P.2d 785]; *People v. Maugh* (1969) 1 Cal.App.3d 856, 862 [82 Cal.Rptr. 147]; *People v. Lamb* (1962) 204 Cal.App.2d 255, 263 [22 Cal.Rptr. 284].) In the present case, defendant is not a party aggrieved by the denial of eligibility to claim exemption to persons who, through welfare grants, receive an allowance for taxes from the state. Defendant never applied for a claim as a person receiving such an allowance but attempted to circumvent the enabling statute. He applied for the exemption, as if he were eligible for the exemption, deliberately concealing the ineligibility resulting from his wife's status. He is aggrieved by the fact that making false claims with intent to defraud is a crime, not by the fact that welfare recipients are not eligible to claim the exemption. The constitutionality of such ineligibility or exclusion of welfare recipients from the homeowner's tax exemption is thus irrelevant to the charges. If the statute was held unconstitutional at this time—and we do not so hold[2]—such holding would not constitute a defense to the charges because when defendant filed his claim, as noted above, the county was authorized to, and did in fact, honor his claim.

III. ■ Defendant contends that the court erred to defendant's prejudice by admitting evidence of defendant's past conduct.

Evidence of specific instances of a defendant's conduct is admissible when relevant to prove motive, knowledge or intent when these are at issue. (Evid. Code, § 1101, subd. (b); *People v. Archerd* (1970) 3 Cal.3d 615, 638-639 [91 Cal.Rptr. 397, 477 P.2d 421]; *People v. Terry* (1970) 2 Cal.3d 362, 396 [85 Cal.Rptr. 409, 466 P.2d 961].)

In the present case, the prosecution had the burden of proving that in applying for the homeowner's tax exemption, defendant, with intent to defraud, presented a false or fraudulent claim to the county and signed

---

[2]We find no California case directly in point but note that California Constitution, article XIII, and Revenue and Taxation Code section 218 survived an equal protection attack in the United States District Court, Northern District of California, in *Dangerfield v. Flournoy* (case No. C-96 116 ACW, decision filed July 16, 1971).

the claim under penalty of perjury, wilfully stating as true matters he knew to be false. (Pen. Code, §§ 72, 118; *People* v. *Walker, supra,* 247 Cal. App.2d p. 559; *People* v. *Guasti, supra,* 110 Cal.App.2d p. 464; *People* v. *Haydon, supra,* 106 Cal.App.2d p. 107.) Evidence was received that when questioned in August 1972, regarding previous welfare payments made to his two children by Dema when, before the marriage, they were living at the home in question, defendant stated that it took a very long time for the aid payments to be discovered. Also, there was testimony that in 1971, defendant and Dema brought steaks to a friend's house, at which time defendant mentioned that the food was bought with welfare money; that defendant subsequently mentioned that he had access to welfare funds, that "everybody does it"; and in August 1972, defendant indicated that his household received welfare, and further that all the "big boys" do it, that "you can beat the racket. Welfare is in such a state—a mess, you know, that it wasn't hard to get around it." Defendant stated that on August 8, 1972, his wife had received welfare since 1967 when they first started living together; that in his opinion they were not entitled to welfare since their two children were born; and that he was guilty of no crime, it being a "matter of beating the system."

The above evidence would tend to establish that defendant knew that his wife Dema was receiving welfare, that defendant would use the welfare funds for his own benefit, and that defendant's attitude toward the "system" was one of scorn and a willingness to engage in dishonest conduct to "beat" the system. Such evidence would in turn tend to establish that in applying for the homeowner's tax exemption despite the fact that his wife was receiving, and he was making use of, AFDC payments, defendant was again attempting to "beat the system," and therefore was intending to defraud the county by filing a false claim. It was for the trial court to determine whether the probative value of this relevant evidence was outweighed by its prejudicial effect. (*People* v. *Archerd, supra,* 3 Cal.3d 615, 638; Evid. Code, § 352.) We find no abuse of discretion in the admission of these statements.

■ Defendant complains of testimony offered by Mr. Heffernan (the district attorney's investigator) to the effect that in response to Heffernan's remark that if defendant didn't stop "screwing around" (the reference was to a possible welfare fraud in seeking aid for his two children as well as to the present charges), he was going to end up in state prison, defendant replied, "Yeah, I was telling my old lady we better play it straight for a couple of years." This conversation was carried on after defendant had been given his constitutional rights and been questioned on and arrested

for filing the claim in question, and while he was being transported to the district attorney's office. In other words, defendant's statement was apparently offered as an admission toward proving the crimes in question and prior conduct was only incidentally involved. (See *People* v. *Wheelwright* (1968) 262 Cal.App.2d 63, 69 [68 Cal.Rptr. 356].) Defendant's statement to the investigator indicated a consciousness of guilt and was accordingly admissible.

The judgment (order of probation)[3] is affirmed.

Richardson, P. J., and Janes, J., concurred.

A petition for a rehearing was denied July 8, 1974, and appellant's petition for a hearing by the Supreme Court was denied August 14, 1974.

---

[3]On count I (presenting a false claim) defendant was placed on probation for one year and "imposition of judgment and sentence" was accordingly suspended. Conditions of probation were that "defendant be confined to the Sacramento County Jail for a period of three (3) months and . . . comply with all rules and regulations" thereof and "conduct himself in a proper manner" while in confinement. On count II (perjury) he was sentenced to the state prison for the term prescribed by law. It does not appear from the clerk's transcript that there was a pronouncement of judgment. However, execution of the prison sentence was suspended for one year and defendant was placed on probation subject to the conditions that he was to be confined in the county jail for one year and, again, conform to jail rules and regulations and be of good conduct while in confinement. The probationary jail terms were made concurrent. The clerk's minutes and the order of probation do not specify that the term of probation on this count was also one (1) year but it is implied that the term of probation is coterminous with the suspension of execution of sentence.

These orders were made on August 22, 1973. Probation will expire within the next six weeks. In the remote event of a revocation of probation, if defendant is returned to court for further proceedings, a problem of double punishment would arise. At argument, the Attorney General conceded that there was a single criminal objective in defendant's course of conduct. In these circumstances, although both sections 72 and 118 of the Penal Code were violated by that conduct, defendant may be punished for only one violation. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 637 [105 Cal.Rptr. 681, 504 P.2d 905].) The *Beamon* guidelines (pp. 637-640) must be observed in the event of any future sentencing proceedings.