MARY LEE SHARER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sharer v. Commissioner
Docket No. 25855-91
United States Tax Court
T.C. Memo 1994-453; 1994 Tax Ct. Memo LEXIS 457; 68 T.C.M. (CCH) 686; T.C.M. (RIA) 94453; September 8, 1994, Filed *457 Decision will be entered under Rule 155. For petitioner: Roderick L. MacKenzie. For respondent: Kathryn K. Vetter. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in petitioner's Federal income tax for 1986 and 1987 in the respective amounts of $ 16,066 and $ 34,785, and additions to petitioner's Federal income tax for 1986 and 1987 as follows: Additions to Tax
Year
Sec. 6651
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
1986
$ 2,907
$ 875
[1]
$ 3,868
1987
-- 1,739
[1]
8,696
The issues for decision are: (1) Whether petitioner is entitled to claim head of household filing status for the taxable years at issue. We hold that she is so entitled. (2) Whether petitioner is entitled to child care credits for the taxable years at issue. We hold that she is so entitled. (3) Whether petitioner is required to include one-half of the net income of Sharer Accountancy as income on her Federal income tax returns for the taxable years at issue. We hold that she is not so required. (4) Whether *458 petitioner is required to include amounts paid to her from Sharer Accountancy as "spousal wages" as income on her Federal income tax return for taxable years 1986 and 1987. We hold that she is so required, to the extent stated herein. (5) Whether petitioner is required to include amounts paid to her by Gold Country Financial, Inc., as income on her Federal income tax return for taxable year 1987, and if so, whether petitioner is liable for self-employment tax on this income. We hold that she is so required, and that she is liable for self-employment tax thereon. (6) Whether petitioner is entitled to deduct losses attributable to the Sharer Oil partnership on her Federal income tax return for the taxable years at issue. We hold that she is so entitled for taxable year 1986. (7) Whether petitioner is entitled to deduct 100 percent of the itemized deductions substantiated on her Federal income tax return for the taxable years at issue. We hold that she is so entitled. (8) Whether petitioner is entitled to use income averaging for taxable year 1986. We hold that she is not so entitled. (9) Whether petitioner is liable for additions to tax for failure to timely file her 1986 *459 Federal income tax return, pursuant to section 6651(a). [1] We hold that she is. (10) Whether petitioner is liable for additions to tax for negligence, pursuant to section 6653(a)(1)(A) and (B), for the taxable years at issue. We hold that she is. (11) Whether petitioner is liable for additions to tax for substantial understatement of tax, pursuant to section 6661, for the taxable years at issue. We hold that she is, to the extent stated herein. FINDINGS OF FACT The parties submitted this case partially stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioner resided in Sacramento, California. Petitioner was married to Michael E. Sharer (hereinafter Mr. Sharer) in 1975, and continued to be legally married to *460 him throughout the taxable years at issue. Petitioner and Mr. Sharer had one child, born in 1986. Mr. Sharer committed suicide on June 8, 1988. Petitioner's relationship with her husband was one of turmoil; their life together was "stormy", and their personal problems were exacerbated by petitioner's pregnancy and childbirth, which were apparently unwanted by Mr. Sharer. Petitioner and Mr. Sharer never filed for legal separation or divorce. We find that petitioner and Mr. Sharer were not living together but instead were maintaining separate households during the years at issue. Mr. Sharer was a certified public accountant. Beginning in 1980, he operated his own business, called Sharer Accountancy. Sharer Accountancy was operated as a sole proprietorship. The parties have stipulated Sharer Accountancy's gross receipts and the amount of deductible expenses that it incurred during the years at issue. Sharer Accountancy maintained one bank account throughout the years at issue, and another from November 1986 until the end of the years at issue. Petitioner had authority to write checks on both of these accounts. Petitioner and Mr. Sharer also maintained a joint personal checking *461 account throughout the years at issue. This account was in the name of "Michael E. Sharer or Mary Lee Sharer". Beginning in late 1986, checks totaling $ 24,450 were drawn on the Sharer Accountancy accounts and written to petitioner; each of the checks was annotated "spousal wages". Petitioner did not include the receipt of these checks as income in her 1987 Federal income tax return. We find that the payments received by petitioner from Sharer Accountancy were not wages, but instead were reimbursement for payments petitioner made for costs of child care, repayments of court-ordered child support from Mr. Sharer's previous marriage, and satisfaction of loans made to Mr. Sharer in prior years. In January 1987, petitioner received two checks, totaling $ 1,790, from Gold Country Financial, Inc. Petitioner did not include the receipt of these checks as income in her 1987 Federal income tax return. In 1980, Mr. Sharer formed, promoted, and sold interests in a partnership called Sharer Oil; Mr. Sharer was both a general partner and a class B limited partner. Pursuant to the partnership agreement, Mr. Sharer contributed his interest in certain oil leases to the partnership in exchange *462 for a partnership interest. Sharer Oil filed Forms 1065 for each year from 1980 to 1986, but failed to do so in 1987. These returns, along with the accompanying Schedules K-1 of Mr. Sharer, were received as evidence at trial. During 1986, the operator of Sharer Oil's oil leases, to whom Sharer Oil was indebted, filed a chapter 11 bankruptcy petition. The bankruptcy court ordered Sharer Oil to transfer its oil leases to the operator in satisfaction of its debt, and Sharer Oil did so pursuant to the order. Petitioner claimed a deduction for 50 percent of Mr. Sharer's distributive share of Sharer Oil's losses on her Federal income tax returns for 1986 and 1987. [2]
*463 On August 15, 1991, respondent issued a statutory notice of deficiency to petitioner. In the notice, respondent determined deficiencies in and additions to petitioner's 1986 and 1987 Federal income tax. After concessions, the issues that remain for our consideration are those listed above. OPINION Issue 1. Head of Household
Respondent determined that petitioner was ineligible to claim head of household filing status during the years at issue, because she was married at the end of each year at issue. Respondent argues that petitioner failed to meet the statutory requirements of section 2(b), and her correct filing status is married filing separately. Petitioner counters that, for the purposes of claiming head of household filing status, she was unmarried during the years at issue, and thus she is entitled to claim head of household status. Section 2(b) defines a head of household as an individual taxpayer who is unmarried at the close of his or her taxable year and who maintains as his or her home a household which constitutes the principal place of abode for more than one-half of the taxable year of a son or daughter of the taxpayer who resides there as a member of *464 that household. Section 2(b) further provides that an individual taxpayer is to be considered as maintaining a household only if he or she furnishes more than one-half of the cost of maintaining that household. The only dispute in the instant case as to petitioner's eligibility to claim head of household filing status is whether she was unmarried, for the purposes of section 2(b), at the close of the years at issue. The burden of proof on this issue lies with petitioner. Rule 142(a). Section 2(c) instructs that "an individual shall be treated as not married at the close of the taxable year if such individual is so treated under the provisions of section 7703(b)." Section 7703(b) states: SEC. 7703(b). Certain Married Individuals Living Apart. -- For the purposes of those provisions of this title which refer to this subsection, if-- (1) an individual who is married (within the meaning of subsection (a)) and who files a separate return maintains as his home a household which constitutes for more than one-half of the taxable year the principal place of abode of a child (within the meaning of section 151(c) (3)) with respect to whom such individual is entitled to a deduction *465 for the taxable year under section 151 (or would be so entitled but for paragraph (2) or (4) of section 152(e)), (2) such individual furnished over one-half of the cost of maintaining such household during the taxable year, and (3) during the last 6 months of the taxable year, such individual's spouse is not a member of such household,
such individual shall not be considered as married. The only dispute as to petitioner's marital status under section 7703(b) is whether, during the last 6 months of 1986 and 1987, Mr. Sharer was or was not a member of petitioner's household. This is a question of fact. There was conflicting testimony regarding Mr. Sharer's whereabouts and living arrangements during the years at issue. Based on this evidence, we conclude that, in fact, petitioner and Mr. Sharer maintained separate households, beginning in early 1986, and throughout the years at issue. Mr. Sharer was not, therefore, a member of petitioner's household during the last 6 months of 1986 or 1987. Hence, for the purposes of section 7703(b) and section 2, petitioner shall be treated as unmarried during the years at issue. Accordingly, since this is the only matter in dispute *466 regarding petitioner's filing status, we hold that petitioner is entitled to claim head of household filing status for taxable years 1986 and 1987. Issue 2. Child Care Credit
Respondent claims that petitioner is not entitled to child care credits in either of the years at issue because she was married at the close of both years, and did not file joint Federal income tax returns. Petitioner argues that, for the purposes of eligibility for a child care credit, she was not married at the close of either year, and thus qualifies to take the credits. Section 21(a)(1) allows a nonrefundable personal credit of an amount equal to the applicable percentage of employment-related expenses paid during the taxable year by an individual who maintains a household that includes as a member one or more qualifying individuals. If the taxpayer is married at the close of the taxable year, the credit is allowed only if the taxpayer and his or her spouse file a joint return for the taxable year. Sec. 21(e)(2). However, section 21(e)(4) allows a married individual living apart from his or her spouse to qualify for a child care credit, under requirements virtually identical to those listed *467 in section 7703(b), stated supra p 7. See Hopkins v. Commissioner, T.C. Memo. 1992-326. The only issue of contention regarding petitioner's entitlement to a child care credit is her marital status. Based on our finding above that, for the purposes of section 7703(b), petitioner and Mr. Sharer were not married during the years at issue, we find that petitioner and Mr. Sharer were likewise not married for the purposes of section 21(e)(4). Accordingly, petitioner is entitled to child care credits in the amounts claimed for taxable years 1986 and 1987. Issue 3. Sharer Accountancy Income
Respondent argues that the income generated by Sharer Accountancy was, pursuant to California law, community income of petitioner and Mr. Sharer; thus, petitioner must report one-half of this income on her Federal income tax return. Petitioner asserts that, pursuant to California law, this income was the separate property of Mr. Sharer, and hence she need not report any portion of it on her return. It is firmly established that, as between husband and wife, a State's community property law determines the ownership of income for income tax purposes. United States v. Mitchell, 403 U.S. 190, 197 (1971). *468 Under the community property laws of California, income earned by a spouse during marriage is community income. Cal. Civ. Code sec. 687 (West 1982); People v. Rainville, 39 Cal. App. 3d 982, 114 Cal. Rptr. 902 (1974); People v. Lockett, 25 Cal. App. 3d 433, 102 Cal. Rptr. 41 (1972). Thus, spouses filing separate returns must each report their one-half share of community income. United States v. Malcolm, 282 U.S. 792 (1931); Bozek v. Commissioner, T.C. Memo. 1986-37. Income acquired as the separate property of either spouse is not community income. Cal. Civ. Code sec. 5110 (West 1983). The earnings and accumulations of a spouse, while living separate and apart from the other spouse, are the separate property of that spouse. Cal. Civ. Code sec. 5118 (West 1983). Whether spouses are living separate and apart within the meaning of this provision is a question of fact. Feldman v. Nassi, 111 Cal. App. 3d 881, 169 Cal. Rptr. 9 (1980). "Separate and apart" refers to that condition *469 when spouses have parted ways, with no present intention of resuming marital relations; in other words, a complete and final break in the marriage. In re Marriage of Marsden, 130 Cal. App. 3d 426, 181 Cal. Rptr. 910 (1982); In re Marriage of Imperato, 45 Cal. App. 3d 432, 119 Cal. Rptr. 590 (1975). Pursuant to California law, the following behavior demonstrates a lack of intent to conclusively terminate the marital relationship: The failure of the spouses to complete legal actions terminating the marriage; joint traveling, vacations, or other social outings undertaken by the spouses during the alleged period of separation; continuous and frequent visits with the spouse and family; the exchange of gifts between the spouses; undertakings of joint responsibilities such as the filing of a joint return; and use of the marital address by the allegedly separated spouse. In re Marriage of Marsden, supra; In re Marriage of Baragry, 73 Cal. App. 3d 444, 140 Cal. Rptr. 779 (1977). We are convinced that petitioner and Mr. Sharer had indeed parted *470 ways, with no present intention of resuming marital relations, during the years at issue. Although they failed to take legal steps toward divorce, they lived separately for almost the entire 2 years at issue; further, there was testimony that reconciliation was not discussed during this time, and that Mr. Sharer was actually engaged in an affair with at least one other woman. Moreover, we are persuaded that the interactions between petitioner and Mr. Sharer were not indicative of a viable marriage. Based on these facts, we find that petitioner and Mr. Sharer were living separate and apart during 1986 and 1987. Accordingly, pursuant to California law, the income of Sharer Accountancy was not community property, but rather the separate property of Mr. Sharer. Thus, we hold that petitioner was not required to include any portion of this income on her Federal income tax returns for taxable years 1986 and 1987. Issue 4. "Spousal Wages"
Respondent asserts that amounts received by petitioner from Sharer Accountancy, marked "spousal wages", of $ 1,500 for 1986 and $ 25,950 for 1987, constituted gross income pursuant to section 61. Petitioner argues that because these amounts *471 were not compensation for services, they did not constitute gross income, and hence need not be included as income on her Federal income tax returns. Petitioner argues further that these payments in fact represented items not included in the definition of gross income, such as child support and repayment of loans. Section 61 defines gross income as "income from whatever source derived". This broad definition is subject to statutory exceptions, and is supplemented by a nonexclusive list of items that constitute gross income. Sec. 61(a). Among these items is section 61(a)(1), which includes as gross income "compensation for services, including fees, commissions, fringe benefits, and similar items". Petitioner has the burden of establishing error in respondent's determination that an item is properly included in gross income. Rule 142(a). Receipt of child support payments does not constitute gross income; child support is defined as any payment that the terms of a divorce or separation instrument fix, in terms of an amount of money or a part of the payment, as a sum that is payable for the support of the children of the payor. Sec. 71(c)(1). Likewise, it is firmly established *472 that proceeds received from the repayment of loans do not constitute gross income. Beaver v. Commissioner, 55 T.C. 85, 91 (1970); Arlen v. Commissioner, 48 T.C. 640, 648 (1967). The existence of a loan is a question of fact. Beaver v. Commissioner, supra.
Petitioner's first argument, that the payments marked "spousal wages" are excluded from gross income because they were not in fact compensation for services rendered, is without merit. Section 61 is clear in stating that gross income includes, but is not limited to, the specific items listed. Thus, whether the amounts received by petitioner were or were not remuneration for services rendered is not dispositive. Petitioner's contention that a portion of the payments constituted child support, and thus did not constitute gross income, is also unpersuasive. Section 71(c)(1) requires that, in order for an amount to be deemed child support, it must be received pursuant to a divorce or separation agreement, the terms of which fix the amount of the payment. Payments received by petitioner for support of the child of her and Mr. Sharer's *473 union fail this standard because there was no divorce or separation agreement present. Payments related to the child of Mr. Sharer's previous marriage fail because petitioner has neither substantiated the amount of these payments nor proffered an agreement fixing this amount. Thus, the payments are not excluded from gross income. However, the portion of the amounts received by petitioner that constituted repayment of loans is not gross income. In early 1987, petitioner lent Mr. Sharer $ 5,500, which she received as a severance payment from her former employer. We find that this entire amount was repaid with checks marked "spousal wages", and, accordingly, is excluded from petitioner's gross income. Petitioner also asserts that, in 1987, she lent Mr. Sharer $ 8,109, which was the entirety of her and Mr. Sharer's 1985 joint Federal and State income tax refunds. We find that this amount was, pursuant to California law, the community property of petitioner and Mr. Sharer, as it was earned in 1985, while petitioner and Mr. Sharer were married and cohabiting. See Cal. Civ. Code sec. 687 (West 1982). Thus, we find that petitioner lent her 50-percent share of this amount to Mr. Sharer. *474 We find further that this amount was repaid with checks marked "spousal wages", and, accordingly, an additional $ 4,055 is excluded from petitioner's gross income. Hence, we hold that the portion of the payments received by petitioner from Sharer Accountancy described above as repayment of loans is excluded from petitioner's gross income for 1987. With regard to the remainder of the payments, petitioner has failed to meet her burden of showing that they are properly excludable from gross income. Accordingly, we hold that those amounts constitute gross income to petitioner. Issue 5. Gold Country Financial, Inc.
Respondent contends that the checks received by petitioner from Gold Country Financial, Inc., in 1987, totaling $ 1,790, constitute gross income pursuant to section 61. Petitioner argues that because these payments were not compensation for services rendered by petitioner, they are not gross income. As discussed above, section 61 defines gross income broadly as "income from whatever source derived". Compensation for services is but one of the myriad items that constitute gross income. Sec. 61(a)(1). Petitioner bears the burden of establishing that respondent's *475 determination that an item constitutes income is in error. Rule 142(a). Petitioner has failed to meet this burden with respect to the checks received for Gold Country Financial, Inc. Petitioner's sole argument, that the payments were not compensation for services, fails to prove that they did not constitute gross income. Accordingly, we hold that these payments are includable in petitioner's gross income. Respondent determined that petitioner is liable for self-employment tax on the $ 1,790 received from Gold Country Financial, Inc. Section 1401 imposes a tax on the self-employment income of individuals. Self-employment income means the net earnings from self-employment derived by an individual. Sec. 1402(b). In general, net earnings from self-employment means the gross income derived by an individual from any trade or business that he or she carries on, reduced by allowable deductions attributable thereto. Sec. 1402(a). Petitioner bears the burden of showing that respondent's determination that she is liable for self-employment tax is erroneous. Rule 142(a); cf. Jones v. Commissioner, T.C. Memo. 1994-230; O'Rourke v. Commissioner, T.C. Memo. 1993-603. *476 Petitioner has presented no evidence showing that the $ 1,790 received from Gold Country Financial, Inc., is not subject to self-employment tax. Accordingly, we hold that petitioner is liable for self-employment tax on this amount. Issue 6. Sharer Oil Partnership
Respondent argues that petitioner is not entitled to deduct any losses of Sharer Oil because she has not adequately substantiated Mr. Sharer's basis in the partnership. Petitioner claims that Sharer Oil's Federal income tax returns for the years 1980 through 1986 suffice to substantiate Mr. Sharer's basis. Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Petitioner bears the burden of proving that she is entitled to any deduction claimed. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Section 704(d) limits the deduction of a partner's distributive share of partnership loss to the partner's adjusted basis in the partnership at the end of the partnership year. Sec. 1.704-1(d)(1), Income Tax Regs. The partner's adjusted basis in his or her partnership interest comprises his or her adjusted *477 basis in property contributed to the partnership. Secs. 705(a), 722. A partner's adjusted basis in the partnership is increased, inter alia, by the partner's distributive share of the partnership's taxable income since he or she became a partner. Sec. 705(a)(1)(A). A partner's adjusted basis is decreased, inter alia, by the partner's distributive share of partnership losses since he or she became a partner. Sec. 705(a)(2)(A). Respondent does not challenge petitioner's entitlement to her community property share of Sharer Oil's losses during the years at issue, even though, pursuant to California law, income earned by petitioner and Mr. Sharer during this time was the separate property of each. See supra Issue 3. Respondent argues only that the deductibility of these losses is limited by petitioner's failure to substantiate Mr. Sharer's basis in the partnership. In order to deduct the losses of Sharer Oil, petitioner must prove her entitlement to them by substantiating Mr. Sharer's basis in the partnership. For taxable year 1986, petitioner has done so adequately. Sharer Oil's Forms 1065 for each year, beginning with 1980, its year of formation, and ending with 1986, *478 allow Mr. Sharer's basis in the partnership to be calculated as of the end of taxable year 1986. Accordingly, we hold that petitioner is entitled to deduct her community property share of Sharer Oil's 1986 loss to the extent allowed by section 704(d). However, petitioner has failed to prove her entitlement to deduct Sharer Oil's 1987 loss. Neither Sharer Oil nor Mr. Sharer filed Federal income tax returns for taxable year 1987. Moreover, no other evidence was proffered showing transactions, if any, between Mr. Sharer and Sharer Oil during 1987, or the amount of Sharer Oil's taxable income or loss for that year. In short, petitioner has substantiated neither Sharer Oil's loss for 1987, nor Mr. Sharer's basis as of the end of that year. Thus, we hold that petitioner is not entitled to deduct Sharer Oil's 1987 loss as claimed on her return. Issue 7. Itemized Deductions
Respondent argues that since petitioner paid deductible expenses out of community funds during the years at issue, she is entitled to deduct only 50 percent of these expenses. Petitioner counters that the expenses were paid out of separate funds, and hence she is entitled to deduct the full amount expended. *479 The parties stipulated the amount representing 100 percent of the deductible expenses. We held above that, during the years at issue, petitioner and Mr. Sharer were living separate and apart; thus, pursuant to California law, the earnings and accumulations of petitioner and Mr. Sharer during these years were the separate property of each. We find further that petitioner paid the expenses in question out of her separate funds. Accordingly, we hold that she is entitled to deduct 100 percent of the amount stipulated as deductible expenses paid. Issue 8. Income Averaging
Petitioner used income averaging to reduce her tax burden in 1986. Respondent asserts that the use of income averaging was inappropriate, because petitioner failed to properly substantiate her income and deductions for the years preceding 1986. In order to utilize income averaging, it is necessary to determine and adjust the taxable income of the prior 4 taxable years. Sec. 1301. Petitioner bears the burden of showing the income and deductions for the 4 taxable years immediately preceding the year in which income averaging is sought to be used. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). *480 Petitioner has failed to meet this burden. The only proof of income and deductions for years preceding 1986 is the joint Federal income tax return of petitioner and Mr. Sharer for taxable year 1985. No information was proffered concerning taxable years 1982, 1983, or 1984. Therefore, we hold that petitioner is ineligible to use income averaging in 1986. Issue 9. Additions to Tax--Failure To Timely File
Respondent determined that petitioner is liable for an addition to tax under section 6651(a) for failure to timely file her 1986 return. Petitioner asserts that because there was no tax due in 1986, there is no addition to tax pursuant to section 6651(a). Petitioner's 1986 return was filed on October 18, 1988, well after the due date prescribed by section 6072(a). Section 6651(a) imposes an addition to tax for failure to timely file a tax return. The addition is computed as a percentage of the amount required to be shown as tax on the return in question. Sec. 6651(a)(1). The addition to tax does not apply if the failure is due to reasonable cause and not to willful neglect. Sec. 6651(a)(1). Petitioner presents no colorable argument as to why her 1986 return was *481 filed over 18 months late. Nothing in the record indicates that petitioner applied for an extension of time to file the return, and petitioner has not established a reasonable cause for her failure. Accordingly, if, after the Rule 155 computation ordered herein, there is tax due on petitioner's 1986 return, respondent's determination with respect to section 6651(a) is sustained. Issue 10. Additions to Tax--Negligence
Respondent determined that petitioner negligently underpaid her taxes in 1986 and 1987. Petitioner contends that there was no underpayment of tax; thus, there should be no addition for negligence pursuant to section 6653. Section 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(1)(B) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. For purposes of section 6653, negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent *482 person would do under similar circumstances. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989); Crocker v. Commissioner, 92 T.C. 899, 916 (1989); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner proffered no evidence indicating that her treatment of these items was in accord with that of a reasonable and prudent person in like circumstances. Petitioner bears the burden of showing that respondent's determination of negligence is incorrect. Rule 142(a). Petitioner has failed to meet this burden and, therefore, we sustain respondent's determination of additions for negligence. Issue 11. Additions to Tax--Substantial Understatement
Respondent determined that petitioner substantially understated her income tax in 1986 and 1987. Petitioner again contends that, because no understatement exists, there are no additions to tax. If there is a substantial understatement of income tax for a taxable year, section 6661(a) imposes an addition to tax equal to 25 percent of the underpayment attributable to that understatement. *483 An understatement exists where the amount of tax shown on the taxpayer's return is less than the amount required to be shown on his or her return. Sec. 6661(b)(1)(A). In the case of individuals, an understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown. Sec. 6661(b)(1)(A). Excepting items attributable to tax shelters, the amount of the understatement is reduced by items with respect to which the taxpayer had substantial authority for his or her position or for which relevant facts affecting the tax treatment were adequately disclosed. Sec. 6661(b)(2)(B). Petitioner has not attempted to show that there was substantial authority for the items to which the substantial understatement addition applies, or that the tax treatment of those items was adequately disclosed. Petitioner, therefore, has not carried her burden of establishing that respondent's determination under section 6661(a) is wrong. Accordingly, if, after the Rule 155 computation, there is a substantial understatement of petitioner's income tax as a result of the items identified above within the meaning of section 6661(b)(1)(A), respondent's determination *484 under section 6661(a) is sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. 50 percent of the interest payable on the portion of such underpayment that is attributable to negligence.↩
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Because neither Mr. Sharer nor Sharer Oil filed Federal income tax returns for 1987, it is unclear how petitioner arrived at the amount deducted for that year. Petitioner, on brief, states that the parties have stipulated that the court-ordered lease transfer caused Sharer Oil's 1987 loss and hence the deduction on petitioner's tax return. However, the stipulation of facts says only that the leases were transferred; it does not mention the existence or amount of any resulting partnership loss.↩